MARGARET CLARKSON, AND ANN ELIZABETH, CLARA AND ROBERT CLARKSON, JR., BY MARGARET CLARKSON, THEIR NEXT FRIEND, Plaintiffs in Error, v. CHARLES CREELY AND THOMAS C. LUNEY, Defendants in Error.

*Equity—Mortgage—Fraud.*—Where the sale, under a deed of trust to secure payment of a debt, was procured by fraud by lulling the owner of the land into security by the promise of the creditor not to sell without first making demand, the court set aside the sale and granted permission to redeem. (See S. C., 35 Mo. 95.

*Error to St. Louis Land Court.*

*A. J. P. Garesché,* for plaintiffs in error.

*Glover & Shepley,* for defendants in error.

FAGG, Judge, delivered the opinion of the court.

This case was before the court on an appeal from the St. Louis Land Court and determined at the March term, 1864 —35 Mo. 95. Judgment in favor of the defendants had been entered up in the Land Court upon issue joined in demurrer, and it was reversed and remanded for further trial. The defendants answered and a trial was then had upon the merits. The judgment being for the defendants, it is

again brought to this court by writ of error. In considering the questions presented by the petition, the facts being taken to be true, it was settled that the act of Luney " in proceeding to enforce the deed of trust without notice to Mrs. Clarkson of the acceptance or rejection of her offer, or of his intention to cause the property to be sold under the deed of trust, was a fraud upon her which authorizes a court of equity to interfere and permit her to redeem the land. Of course, the only question presented now is whether the facts proved on the trial are sufficient to support the allegations in the petition.

A witness named Peter Foster was introduced in behalf of the plaintiffs, and all the facts proved are to be gathered from his testimony. No testimony was offered by the defendants. The case is very fully stated in the opinion of Judge Bates and need not be repeated here. Foster stated, that (to use his own language), " at the instance of Mrs. Clarkson, I went to see Luney about the note and deed of trust (the subject matter of this litigation) ; I understood from her that he was about to sell the property over her head, and that I should try to save her. I asked him about the matter, and he said that he did hold the note and that he wanted his money. I asked him how much it was, as I would raise the money to save the property to the widow, offering to pay part down and the balance within a week or ten days. He then answered me that he was about to make a trade ; that if he did, he would want the whole money, and if not, he would not want any ; that he could not positively tell for a week. I then agreed with him that he should let me know whether he wanted it or not, and if he did, I would see that he got it, as I would myself pay it to him ; and *he then agreed that he would do nothing under the deed of trust until he let me know.* I then saw Mrs. Clarkson and told her of it."

There could have been no pretence on the part of Luney that this was a mere intermeddling by Foster on his own account and to accomplish some purpose for his own benefit.

He must have understood all this as coming directly from Mrs. Clarkson. The very circumstances of the case would have suggested such a thing if nothing at all had been said during that interview to convince him that such was the fact. At the instance of Mrs. Clarkson, he had taken up this identical note to save the property for the widow and her children. It was no new thing, then, for some friend to interpose on behalf of this woman to prevent her property from being sold. He must have known when he made this promise that he was in point of fact dealing with Mrs. Clarkson and not Foster. He does not pretend on that occasion that his want of money was an absolute one. It was expressly stated to be conditional merely, coupled with a promise that when the condition happened the witness should be informed and through him Mrs. Clarkson, because that is the true intent and meaning of what was said. In the meantime no step was to be taken under the deed of trust. No suspicion was expressed as to Foster's ability to do what he had promised; he is not treated as a man intermeddling with something that did not concern him, and his residence was so situated with reference to Luney's that it was an easy matter to have communicated with him at any time that he might be compelled to raise money. All these facts may possibly be consistent with the good faith of Luney in this transaction, but it must be said that they were such as to lull Mrs. Clarkson into security in reference to a sale of the property. She gave herself no further trouble about the sale, did not look for any more advertisements of the property, and it is not at all wonderful that in a few weeks thereafter the property was advertised and actually sold before she or Foster had any knowledge of it. Now if this had been a trap designed and intended by Luney to cheat this woman and her minor children out of this property, it could not have been more exactly suited to the purpose than it was. But it is not necessary, in order that justice may be done these parties, that such a conclusion should be drawn from the facts. Whatever was

intended, it is clear to us that the acts of Luney operated as a fraud, and he cannot be permitted to reap any benefit from them.

Luney himself being the purchaser of the property at the sale, is of course affected with full knowledge of all facts in the case. His bid at the sale was $1,050, and the witness says "the property was safely worth some $1,500." We conclude therefore that the allegations contained in the petition were sufficiently supported by the testimony.

An effort was made to prove a tender of the amount due upon the note, with the costs and expenses of the trust, made previous to and again at the time of commencing the suit. The evidence is not sufficient for that purpose and therefore no notice can be taken of that point. The judgment of the Land Court in dissolving the temporary injunction and assessing the damages therefor, as well as the decree for the defendants upon the petition, must therefore be reversed.

Upon a careful examination of the record in the case, there seems to be no reason for remanding this cause for a further trial, but such judgment will be given here as ought to have been entered up in the court below. It is therefore ordered that the sale of the property mentioned in the petition be set aside and held for naught; that the said Creely, as trustee, be perpetually restrained and enjoined from executing a deed to the same to Luney, or the performance of any other act or thing under said deed, and that the said plaintiffs be permitted to redeem the said property by paying the amount of the note held by Luney with ten per cent. interest thereon from the time of its transfer to him; and the cause is remanded to the St. Louis Circuit Court, that, in conformity with this decree, it take an account between the parties.

The other judges concur.