## Light v. Light, Appellant.

*Deed—Fraud—Confidential relation—Evidence—Cancellation of deed—Equity.*

A deed executed by a woman, ignorant, elderly and feeble, to her niece, who occupied a confidential relation to her, will be set aside, where it appears that the niece by importunities, misstatements, flattery and threats of suicide, induced her aunt to promise to execute a

deed reserving to herself a life interest, and giving to the niece the remainder; that the niece, deceiving her own attorney, procured the preparation of a deed absolute in its terms; and that the aunt executed it without being informed of its terms, and in the belief that it carried out the gift to the niece in the manner in which she intended.

Argued Feb. 18, 1908.   Appeal, No. 173, Jan. T., 1907, by defendant, from decree of C. P. Lebanon Co., Equity Docket, 1905, No. 2, on bill in equity in case of Mary A. Light v. Fannie B. Light.   Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ.   Affirmed.

Bill in equity to cancel a deed on the ground of fraud.

EHRGOOD, P. J., filed the following opinion:

From the evidence submitted we find the following facts:

1. That Mary A. Light, the above-named plaintiff, is a person of limited education and practically no business qualifications, more than sixty years of age and enfeebled through sickness; that she has always reposed great confidence and trust in the defendant, Fannie B. Light, who is her niece and has lived in the same family with her for more than thirty years and, at various times, was intrusted with the legal papers and business of the said plaintiff and was fully conversant with her affairs.

2. That on September 30, 1868, she became seized in her demesne as of fee and remained so seized until September 28, 1904, of a certain lot of ground situate in North Lebanon township, Lebanon county.

3. That upon said lot was erected a large brick dwelling house known as No. 917 Maple street, and several outbuildings; the whole of said lot and buildings, on September 28, 1904, were in the actual possession of William V. Light, as tenant of the plaintiff, and still are in his possession, he holding the same as tenant of the plaintiff and paying the rents to her.

4. That by intimations of personal violence to herself by the defendant, importunities for the real estate in question, flattery and misstatements, she so worked upon the feelings of the defendant that the defendant offered to give her the sum of $200, which the defendant declined but insisted that the plaintiff should give her the aforesaid house and lot.   That the plaintiff finally agreed to give to the said defendant the

aforesaid house and lot after her death, but reserving and retaining unto herself the absolute control and possession of said property during her lifetime, with the right to use up the whole, if necessary, for her maintenance and support.

5. That the said Fannie B. Light, the above-named defendant, thereupon, in violation of this agreement, procured an attorney, and, without informing him of the full and entire agreement, had him prepare an absolute deed of conveyance of the said house and lot to her the said defendant, without any such reservation as agreed to and without informing the said plaintiff that she procured an absolute deed to be prepared, which the said Mary A. Light, the above-named plaintiff, executed by mistake, on September 28, 1904, through the deceit practiced upon her by the defendant and under the belief that it was such a writing as had been agreed upon, and without time and opportunity being given to her to consult counsel of her own choice or counsel who prepared the deed, except in the presence of the defendant, or to consult any of her relatives and friends, other than the defendant, but wholly upon the implicit confidence and trust she reposed in the defendant.

6. That after the execution of the aforesaid deed of conveyance the same was handed to the defendant and remained in her possession until August 11, 1905, when she took it to the recorder's office of Lebanon county and had the same recorded.

7. That the plaintiff did not know that she executed an absolute fee simple title of her property to the defendant until a short time before she instituted these proceedings, when she learned its real legal effect through friends, and after verifying their statements, through counsel, she at once rescinded her agreement and demanded the cancellation of the said deed of conveyance which the defendant refused and still refuses.

8. That the plaintiff never intended to convey her aforesaid property absolutely to the defendant, but only what remained after her death.

9. That no money was paid by the defendant to the plaintiff for said property nor by anyone else for her, and that the plaintiff was not indebted to the defendant nor did any valuable consideration whatever pass between them for said property.

10. The plaintiff's estate, exclusive of the real estate in ques-

tion, consists of personal property to the amount of about $1,000, the real estate in question being the bulk of her estate.

### CONCLUSIONS OF LAW.

As a general rule fraud is not presumed, but must be proved by the party seeking to relieve himself on that ground. But when the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on equal terms, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation or from overmastering influence, or, on the other side, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent upon the party in whom such confidence is reposed, to show affirmatively that no deception was used and that all was fair, open, voluntary and well understood: Beach on Modern Eq. Jur., sec. 114; Stepp v. Frampton, 179 Pa. 284; Hasel v. Beilstein, 179 Pa. 560.

### DISCUSSION.

The defendant admits that a confidential relation existed between herself and the plaintiff, and from the appearance of the parties before the court and their testimony it is not only evident that a relation of trust and confidence existed, but also that the defendant exerted an overmastering influence over the plaintiff prior to the execution and delivery of the deed. The defendant prior to this time was employed in a telephone exchange and was sick for about three weeks and was at home with the defendant at her father's house, during which time she persuaded the plaintiff to give her the bulk of her property after her death. From her own testimony the defendant commenced the conversation about the property. The plaintiff says that the defendant said that they were like sisters and that she would be the next to get the property. And also that she said she could not work at the telephone long any more and she thought already she would kill herself about it. That her brothers and sisters had homes of their own and she had none. The defendant also admits that the plaintiff was to have a life interest in the said house and lot and yet not one word

about it was said when she employed an attorney to prepare the deed, or did she say anything when the plaintiff executed the deed. The defendant did not show in this proceeding after she admitted the existence of a confidential relation that no deception was used and that all was fair, open, voluntary and well understood by the defendant. Even after the deed was executed and delivered to her (the old lady), the plaintiff was permitted to treat this house and lot as if no transfer of title had taken place and she was kept in ignorance of the full import of the instrument she had signed in the office of Mr. Adams until the defendant placed the deed on record about a year afterwards. The defendant not only succeeded in deceiving her aunt, the plaintiff, but also her counsel of the true facts. It is idle to suggest a parol agreement as to the rents.

There is not a particle of testimony that any agreement was made subsequent to the execution of the deed nor that such part of their agreement was to be left out of the deed. A fraud was perpetrated on the plaintiff, and she is entitled to a decree.

And now, March 16, 1907, this cause came on to be heard and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz.:

1. That the said deed of September 28, 1904, executed by the plaintiff and delivered to the defendant, is null and void, and passed no title to the defendant to the property therein described.

2. That the said deed be delivered up to the plaintiff to be canceled.

3. That the said deed be marked void upon the books in the office of the recorder of deeds for the county of Lebanon, wherein the same is recorded.

4. That the defendant pay the costs of these proceedings.

*Error assigned* was the decree of the court.

*Robert L. Adams,* with him *Paul G. Adams* and *J. G. Adams,* for appellants.

*Samuel T. Meyer,* for appellee.

PER CURIAM, May 4, 1908:

The decree is affirmed on the opinion of the court below.