JAMES M. WILKERSON, Appellant, v. HOMER B. WANN.—16 S. W. (2d) 72.

Division Two, April 10, 1929.

*Roscoe C. Patterson, Mason & Page* and *Farrington & Curtis* for appellant.

*Barbour & McDavid* and *Herman Pufahl* for respondent.

DAVIS, C.—This is a suit in equity to cancel a deed to real estate. The chancellor *nisi* refused to decree cancellation, but entered a decree that the deed was a valid and binding conveyance, subject, however, to a life estate in plaintiff. Plaintiff, James M. Wilkerson, appealed from the decree and judgment. Lettie B. Wilkerson, his wife, also plaintiff, did not appeal.

The salient facts adduced in behalf of plaintiff sustain the finding that, prior to July 2, 1923, plaintiff held title to and owned in fee simple real estate situated in Greene county, described, to-wit: "All of Lot One (1) and twenty-seven feet or enough off the North Side of Lot Two (2) in John S. Waddill's Addition to the city of Springfield, Missouri, to make sixty-feet fronting on Boonville Street, otherwise described as follows: Beginning at the Northwest corner of Lot One, John W. Waddill's Addition, thence South along the East side of Boonville Street sixty feet, thence East eighty-four feet, thence North sixty feet, thence West eighty-four feet to said Northwest Corner of Lot One in John S. Waddill's Addition to the city of Springfield, Missouri."

On July 2, 1923, plaintiff, without any reservation, limitation, condition or exception therein, conveyed by warranty deed the aforesaid real estate to defendant. Plaintiff was then a man seventy-nine years of age and suffering from prostate affection, and about two months thereafter he endured, in a hospital, two operations. On this occasion his recovery was thought hopeless. Plaintiff had two lineal descendants, sons of deceased daughters. He also had two brothers and two sisters living. All of them, except one brother, he considered more or less dependent, and financially aided them on occasions. Shortly before conveying this property to defendant, he deeded and gave to his sister, defendant's mother, a parcel of land in Springfield, having an income of sixty dollars or more a month. To his grandsons he deeded, share and share alike, a parcel of land in Springfield, valued at $50,000, reserving in the deed, however, the emoluments thereof during his life.

Defendant, about forty years of age, was cashier of a bank at Humansville and theretofore had been a real estate and insurance broker. Prior to July 2, 1923, defendant called on plaintiff and, after mentioning that business was a little dull, asked him if he

could not give him a little trading or business to do. Plaintiff informed defendant he might have some property to trade; that defendant might aid him to increase his rents; and that he wanted to increase the rent on the City Hall Drug Store, and also oust a tenant or increase his rent. Plaintiff agreed to pay defendant for this work. Plaintiff then deeded the property to defendant, his nephew, in whom he had the utmost confidence, in order to increase the rents, and believing that a deed would benefit defendant in trading or handling it. Upon deeding defendant the property, plaintiff forbade him recording the deed. Plaintiff testified that he never had any intention of making a gift of the property to defendant. As we read plaintiff's evidence, at the time of executing the deed plaintiff told defendant that he wanted defendant to execute a note for $30,000, secured by a deed of trust on the property; but even if he did not so tell him at that time, later on he demanded that defendant execute them, which defendant accordingly executed for that sum. The note and deed of trust were made to defendant's brother, Arthur Wann, who indorsed and delivered them to plaintiff. Plaintiff credited the note with $1,000, which was to act as defendant's commission in whole or in part in the event he sold or traded it. Plaintiff denied that he wanted the note or deed of trust for the mere purpose of showing them to his people, or that he agreed to return them to defendant. Defendant knew the drawer in which plaintiff placed the note and deed of trust. Some time later, plaintiff discovered that the deed of trust was missing. He then demanded that defendant return them, and defendant said he would deed the property back to plaintiff. When he asked that the note and deed of trust be returned to him, defendant said he thought maybe plaintiff had given them to him. Plaintiff replied that there was no gift in the transaction, and defendant knew it. Plaintiff denied that he gave defendant the property on the understanding that he was to take care of plaintiff's brothers and sisters. Plaintiff said that he gave defendant different propositions, so that he would be able to handle it if he could. Plaintiff said that he wanted that mortgage executed to protect himself, and that the deed was for the purpose of permitting defendant to use it to his advantage in trading, in doing business for plaintiff. He did not recall a certain conversation had with his sister, Susie Wann. Defendant was to collect the rents and turn them over to plaintiff. Plaintiff introduced the defendant to the tenants as their new landlord. Defendant signed leases to tenants, but plaintiff drafted them. Plaintiff paid for all repairs and upkeep. The rent was paid to defendant, but he sent it to plaintiff.

The evidence shows that defendant drafted or wrote the warranty deed. According to Mrs. Wilkerson, the deed was delivered for the purpose of having the rent raised and to oust a tenant. Shortly after

plaintiff returned from the hospital, in response to a telephone call to defendant to bring with him the papers, defendant called on plaintiff. The following is shown by the evidence:

"Q. What was said there? A. Well, the Doctor [plaintiff] told him, he said, 'Homer, you know I never intended to give you that property. I never did tell you I would give it to you.' He said, 'I want the property back.' Homer said, 'Why, Uncle Doc, I thought you give it back to me.' He said, 'I never give it to you. I never meant to give it to you and I want you to deed it back.'

"Q. What did Homer say? A. He said, 'Well, Uncle Doc, I don't hardly think you know what you are talking about.' He said 'You are in pretty bad shape.' He said, 'I am going home now. You keep quiet and don't worry about it, and I will be back next week (that was Friday), and if you are to yourself and want the property back, I will deed it to you.'"

Three other witnesses for plaintiff testified substantially to the same effect. One witness stated that plaintiff was not very strong and that he was easily upset and became nervous and excited when talked to.

Plaintiff stated that he never signed the deed dated May 9, 1922, in which he and his deceased wife purported to convey property to his two grandsons. Plaintiff's present wife stated that defendant on one occasion said to her, "Well, Aunt Lettie, put up with everything you can. He is a child and if he gets unreasonable, call me up. I can handle him and I will take care of him."

Defendant's evidence tends to show that he approached witness Akin and broached the trading of the property in controversy for a farm owned by witness, saying, "I aim to give it to Homer Wann if I buy it." Later, in August, 1923, plaintiff met witness and stated that he decided to give the property in controversy to Homer Wann. Witness said later that plaintiff stated, "I have already deeded it to Homer, and I expect Homer to look after his mother, Sis and Joe when I am gone." Witness further said that plaintiff said that he had decided to give Homer the property in place of the farm.

Defendant stated that he was told by his brother-in-law that plaintiff desired to see him. Shortly thereafter defendant visited him and plaintiff said that he had been thinking a little about helping defendant and his brother some; that he had been thinking of giving them some property. Later defendant saw plaintiff in Springfield, and plaintiff said that he had decided to give them a building, pointing out the building in controversy, and that he wanted him to look after his folks at Humansville, who were getting old. Defendant replied, "Well, Uncle Doc, that would certainly be mighty nice if you would give it to us." Among other things he said that the building had been renting too cheap. Later, in another conversation, plaintiff stated that he was only giving the property to defendant to have

after his death. He wanted defendant to have the rents after his death to help take care of the people and property, but that he was giving defendant the property. He reserved the rents, but was to pay all expenses. Defendant said that he did not remember the exact conversation, that is, whether plaintiff was selling him the property or giving it to him or deeding it to him. On July 2, 1923, in the presence of plaintiff's brother George, defendant visited plaintiff who said, "Homer, I have just been talking to George here about giving you that property. Can you write a deed?" Defendant said, "Well, Uncle Doc, I have written lots of deeds." Plaintiff said, "Well, I guess I would just as well do it now as any time, if we have some blank deeds in the house." Plaintiff then obtained a blank deed and from deeds and abstracts designated the description of the property, telling defendant the number of feet. Defendant then drafted and wrote the deed, saying, "Well, I think I have the deed all finished now, and all already to be signed." Plaintiff and his wife immediately went to a notary and signed and acknowledged the deed. Defendant stated that afterwards he put twenty dollars in revenue stamps on it. That he collected the rent on the property for a few months and turned it over to plaintiff. Thereafter plaintiff collected the rent. Defendant executed leases to the tenants. Defendant stated that he understood the plaintiff reserved the rent on the building for his lifetime. Defendant stated that he did not think it necessary to reserve in the deed the rents to plaintiff's use for life, as they had a verbal understanding to that effect. He admitted that he executed a deed of trust and a note for $30,000 to his brother as payee, to run for five years, at the instigation of plaintiff, who said that he desired it to satisfy his wife that he had sold the property to defendant instead of giving it to him. Plaintiff said to him, however, that it would not amount to anything, but that he would keep it awhile. Defendant's brother indorsed the note to plaintiff, delivering it and the deed of trust to him. Defendant said that plaintiff then ordered him, after the indorsement of his brother, to write on the note, "Pay to the order of Homer Wann," and plaintiff then indorsed it, keeping, however, the note and deed of trust. However, he had defendant put on the note a credit of one thousand dollars. This was on November 16, 1923, after plaintiff returned from the hospital. Plaintiff said at that time to defendant that he had better take the deed and have it recorded. Defendant said that plaintiff gave him the note and deed of trust on July 13, 1924, and that he destroyed the note after showing it to a few people. Nothing was said about it from that time until just before suit was instituted, when plaintiff called him to come to him and demanded the return of the property. Plaintiff said to defendant, "Homer, did you bring my papers? Did you bring the deed to that property?" Defendant said, "What do

you mean?" Plaintiff said, "The deed to that property I gave you. Did you bring it?" Defendant said, "No, I didn't bring it, Uncle Doc. Didn't you give me that property, didn't you give me the building? I thought you intended to give it to me." Plaintiff said, "No, I never intended to give it to you." Defendant replied, "I took it that way, I thought you did. Uncle Doc, what is the matter with you? Do you want that property back you gave me?" He said, "Well, I have changed my mind."

Plaintiff then asked defendant about the note and mortgage, and defendant replied that he had told him to destroy it, and that he had done so. Plaintiff never asked him at any time to return the note and deed of trust, but he did ask him to give him back the property. Defendant said to him, that he was weak; that he had been in the hospital and was not in shape to talk about it, and to wait a few days, and that he (defendant) would come back and do what was right about it. That he never told him at any time that he would deed the property back to him. Plaintiff insisted that defendant deed to him the property that day. Defendant stated that, when he previously lived in Springfield, he supposed that he may have been in plaintiff's house nine times in nine years, although plaintiff frequently visited him at his office. Defendant stated that plaintiff gave defendant's brother a part of the property that he deeded him, and that was the understanding. Defendant stated that he wrote the deed as he was told, and that he supposed he could have worded it reserving the use of the property to plaintiff, but plaintiff did not ask it. Defendant stated that he had never expended any money on the property. He further stated that he thought any court in the world would rule it was right for him to have that building, since plaintiff had given it to him. However, he said that plaintiff said, on the occasion that he demanded the return of it, that he never did intend to give it to him, but that was the first time he had ever intimated it.

Plaintiff's brother testified, in substance, that plaintiff said, "I am going to make Homer a deed to that property. I am going to give it to him, but I am to have the rents on it until I die;" that the rents on it were to keep up plaintiff's brothers and sisters after his death. Other witnesses testified for defendant, most of whom said that plaintiff admitted to them that he gave the property to defendant, and one or two that he had deeded it to him, and one that he had sold the property to defendant. Other pertinent facts may appear in the course of the opinion.

I. Defendant has filed a motion to dismiss plaintiff's appeal or to affirm the judgment. The grounds are (1) that plaintiff has failed

to reduce the testimony to narrative form; (2) that the record proper does not show the filing of the second amended petition or the answer to it or the entry of the judgment; (3) that the abstract fails to develop a complete index; (4) that neither the record proper nor the bill of exceptions establish the filing of the bill of exceptions.

As to the first ground, we find no violation of our Rule 13 as it now reads, for it provides that the evidence of witnesses may be in narrative form except when the questions and answers are necessary to a complete understanding of the testimony. As to the second ground, we think the record proper shows the filing of the second amended petition, the refiling of the answer to the amended petition, which appears in the record proper, and the entry of the judgment. It is true that the amended petition is set forth *in haec verba* in the bill of exceptions only, but the direct reference in the record proper to it sufficiently incorporates it in the record proper. As to the third ground, charging an insufficient index, we have examined it and think the index meets the requirements of Rule 13. As to the fourth ground, the record proper shows that plaintiff filed in the trial court his bill of exceptions, duly signed by the court and made a part of the record. The bill of exceptions shows in that regard the following: "And now comes the plaintiffs herein, and, within the time allowed by law, tender the foregoing for their bill of exceptions in this cause and pray the court that the same may be examined, approved, allowed, ordered filed and filed and made a part of the record in this cause, which is accordingly done on this 23rd day of April, 1927." We find no fault with the record entries as shown by the record proper and bill of exceptions. They speak for themselves. The motion to dismiss the appeal or affirm the judgment is overruled.

II. The issues revolve around the basic fact that the land in controversy is claimed by defendant as a donation. It follows that defendant was cast with the burden of proof to demonstrate every essential fact necessary to the validity of a gift. [Tygard v. Falor, 163 Mo. 234, 63 S. W. 672; Spencer v. Barlow, 5 S. W. (2d) 28.]

Notwithstanding defendant's evidence tends to show that plaintiff said that he intended to and had given defendant the property and that he expected him to look after certain relatives that plaintiff had continually aided, the evidence as a whole does not sustain defendant's position, viewed from the burden of proof rule. Defendant wrote the deed and was responsible for its verbiage, save the description. If the deed to him was intended as a donation, it fails to develop that fact. It notes the consideration as one dollar and other consideration in hand paid and

receipt acknowledged, but fails to mention as such love and affection, or to suggest that it was gift. The deed in this regard tended to disprove the theory of gift. [Hall v. Knappenberger, 97 Mo. 509, 11 S. W. 239.]

The evidence develops that plaintiff was an old man, and not very strong, and also nervous, excitable and easily upset, caused, we may infer, by diseased prostate glands. He had not only a blood affection for defendant, but reposed confidence in him. While in this condition, defendant solicited business from him, remarking that it was a little dull. Plaintiff, due to his affection for defendant and his pride in him, desired to help him. As we read the evidence, plaintiff's purposes in executing the deed, even though his judgment erred in so doing, was his desire to aid defendant in handling and selling the property, so that defendant could earn a broker's commission, as well as his desire to increase the rents. Whatever his purpose, the probative force of the evidence fully persuades us that plaintiff did not intend the property to act as a gift to defendant. The demanding and obtaining from defendant the note for $30,000, secured by the deed of trust, confutes the hypothesis of gift, and it is of no moment whether the giving of them was made conditional at the time of the execution of the deed or whether they were demanded later, for, as to gifts, the intention of the donor governs. In this regard, we note that defendant said that plaintiff desired the note and deed of trust to satisfy his wife that the transaction was a sale and not a gift. If this statement is probable, then we are at a loss to understand plaintiff's actions in signing and indorsing the note underneath the words, "Pay to the order of Homer Wann," which he caused to be written thereon. The exhibition of the note as thus indorsed would foster rather than allay inquiry. It appears probable that the note failed to have plaintiff's indorsement as aforesaid, and, even though defendant destroyed the note without motive, the destruction thereof tends to discredit the theory of gift.

Plaintiff insisted that a credit of $1000 be indorsed on the note. This is a circumstance tending to show that the credit was intended as a commission to defendant in the event a sale of the property was consummated, and that plaintiff was to receive net the sum of $29,000 for his interest therein. This circumstantial fact also tended to show that a gift was not intended.

Plaintiff did not become apprehensive until defendant recorded the deed, when he learned that defendant claimed the property as a gift. He then demanded that defendant return the property to him. Whether defendant sincerely thought that plaintiff gave the property to him is of no consequence, provided plaintiff had no such intention. In this regard, defendant testified that he did not remember exactly

whether plaintiff said that he was selling, giving or deeding the property to him. This evidence is not only equivocal, but lacks cogency and certainty, and is insufficient to establish a gift. A gift is a gratuity, and depends upon the voluntary act and intention of the donor. If plaintiff did not intend the warranty deed to act as a gift, it is impertinent what defendant thought about it or how he construed the act, for a receptive mind availed defendant nothing, unless the other essential elements constituting a gift were present. The apprehensiveness of plaintiff at the recording of the deed and his demand that the property be revested in him tended to disprove that a gift was intended.

Defendant's evidence alone develops that plaintiff said and it was the understanding that defendant and his brother, Arthur Wann, were to be jointly interested in the property, that is, that plaintiff gave it to them jointly; that the warranty deed was delivered with the understanding that defendant was to look after or care for plaintiff's brothers and sisters after plaintiff's death; and that it was the understanding that plaintiff reserved the rents during his life. Plaintiff's evidence expressly or constructively denies such understanding. We need not decide that a voluntary conveyance, which does not contain provisions to effect the understanding of the parties, will be set aside at the instance of the grantor, although many authorities support the doctrine. White v. White, 60 N. J. Eq. 104, 45 Atl. 767, and Light v. Light, 221 Pa. St. 136, 70 Atl. 553, will suffice to show the trend of the authorities. However, in writing the deed, defendant failed to insert therein the understandings. It may me inferred then, if such was the understanding, that plaintiff would have noticed the absence thereof in the deed. The fact that the deed did not recite in substance the complete understanding of the parties tends to disprove the intention to make a donation.

III.  Whatever defendant may have intended in the beginning, it is clear that his acts in recording the deed and in refusing to return the property to plaintiff upon his demand operated as a fraud and he cannot be permitted to reap the benefit of it.  [Clarkson v. Creely, 40 Mo. 114.]  It may be that defendant thought that he had authority from plaintiff to record the deed, as he testified, but a misconception of plaintiff's intention in that regard fails to benefit him, and plaintiff's evidence unequivocally denies such authority.  Even though defendant sincerely thought that plaintiff had given him the property, yet if such was not the intention of plaintiff, and defendant, cast with the burden of proof, has failed to satisfactorily shoulder the burden, then the refusal to return the property upon demand operated as a legal fraud.

The judgment is reversed and the cause remanded to the trial court with directions to set aside and cancel the warranty deed from James M. Wilkerson and Lettie Wilkerson, his wife, plaintiffs, to defendant, H. B. Wann, conveying the real estate aforesaid, dated and acknowledged July 2, 1923, and recorded in Book 459, page 427, of the Recorder's office of Greene County, Missouri. *Henwood, C.,* concurs; *Cooley, C.,* not sitting.

PER CURIAM:—The foregoing opinion by Davis, C., is adopted as the opinion of the court. All of the judges concur.

On Motion for Rehearing.

In his motion for a rehearing, defendant challenges the finding of a record entry that shows that the bill of exceptions was duly filed. The abstract of the record shows this entry: "Thereafter, on the 23rd day of April, 1927, and within the time allowed by the court and by law, plaintiff duly filed in said court his bill of exceptions, duly signed by the court and made a part of the record, and which is as follows." This record entry, together with three other record entries, appears on a sheet of paper containing typewriting, and which sheet of paper is pasted to page 13 of the abstract of the record. Before writing our opinion, we were advised by the clerk that this page of typewriting was attached to the abstract of record at the time of filing. On the record before us, there is nothing to show an irregularity. Moreover, Rule 11 (Supreme Court Rules) in substance provides: "If the respondent desires to make objections to the consideration of any question because the abstract of the record fails to show . . . that the bill of exceptions was duly signed or filed, . . . such objections and the reasons therefor shall be served in writing on the appellant or his counsel, fifteen days before the day on which the cause is docketed for hearing, or within fifteen days after the abstract is served." Our docket shows that the cause was set, argued and submitted on October 16, 1928. The affidavit of service of said motion, filed by respondent, shows that the motion to dismiss the appeal or affirm the judgment was served on appellant on October 4, 1928, or twelve days only before the cause was docketed for hearing. The motion was filed in this court on October 8, 1928. The service copy of the abstract of the record on file shows that it was served on respondent on September 6, 1928, and filed in this court on September 11, 1928. It develops that the motion to dismiss the appeal or affirm the judgment was not served on appellant either fifteen days before the day on which the cause was docketed for hearing or within fifteen days after the abstract was served. Consequently, the motion to dismiss the appeal or affirm the judgment was not filed in

time, and the motion is not before us for review, as the matters therein, for the reason stated, are, by force of the rule, waived.

II. Defendant complains that our ruling, "*defendant was cast with the burden of proof to demonstrate every essential fact necessary to the validity of a gift,*" while applicable to a gift of personal property, does not apply to a gift of real estate by deed. We know that there are cases in this State which hold that, where the petition avers fraud or undue influence, the burden of proof is on the plaintiff to develop them, even where a gift is involved. The cases probably have followed, as to the burden of proof, where fraud or undue influence is alleged, the general rule that the burden of proof is on the one alleging fraud or undue influence, but, we apprehend, the court, in writing the opinions, has failed to recall to mind that the rule, as to gifts, places the burden of proof on the donee of the gift. While the burden of the evidence, at the opening of the case, was on the plaintiff to develop a state of facts showing fraud, yet when defendant's evidence came in to the effect that the conveyance was a gift, the situation so changed that the burden of proof devolved on defendant to demonstrate that a gift was intended and completed, including the elements necessary to its validity. We are unable to perceive, upon principle or precedent, that the rule applicable to personal property differs when applied to real estate. In Hamilton v. Armstrong, 120 Mo. 597, l. c. 622, 25 S. W. 545, the facts show a gift of real estate. An excerpt reads: "But it is urged again that the fact that John Hamilton gave away all his estate to his nieces, of itself raises a presumption against the gift. We think the rule unquestionably is that the fact that Mr. Hamilton gave away his whole estate, requires strict and satisfactory proof of all the essentials of a valid gift. That a man of sound mind may voluntarily give away all he has cannot be questioned, but when such a transaction comes under review, the donees must show that he fully understood the nature of the gift and its consequences to him, and those dependent on him." The above case, we think, is authority for the rule that the burden of proof is on the donee of a gift to prove all the facts essential to its validity. But, even though it is not, we think that such is the salutary rule.

We have considered, in reaching a decision, the effect of the evidence adduced by defendant, as well as that adduced by plaintiff. Following such consideration, we think it clearly shows that a gift of the property was not intended.

The motion for a rehearing is overruled. *Henwood, C.,* concurs; *Cooley, C.,* not sitting.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.