LETTIE E. STALLCUP, APPELLANT, v. JESSIE WILLIAMSON and RUSSELL WILLIAMSON, Respondents, No. 41974—235 S. W. (2d) 318.

Division Two, December 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, January 8, 1951.

*J. W. Kachelhofer* for appellant.

*W. T. McCaffree* and *Jack P. Pritchard* for respondents.

[318] BOHLING, C.—Lettie E. Stallcup sued to set aside her warranty deed to forty acres (NE-¼, NE-¼, 27-38-32) in Vernon county, Missouri, to Miss Jessie Williamson and Russell Williamson. We sometimes designate the parties as plaintiff and defendants, and at times designate defendants as Jessie and Russell. The decree sustained the deed and plaintiff appealed, contending principally the evidence requires the cancellation of the deed.

The issue as stated by the trial court and agreed to by plaintiff is whether plaintiff made the deed and knew what she was doing when she made it; although, in addition to mental incompetency, plaintiff's petition charged the existence of a fiduciary relationship, undue influence, fraud, and want of consideration.

E. L. Eagley owned the land. He was plaintiff's first cousin and defendants' uncle by the half blood. Plaintiff and defendants were second cousins. Eagley, plaintiff, and defendants lived within a mile of each other; saw each other often, were friendly, neighborly, visited, broke bread together, and helped each other as occasion arose.

Plaintiff had lived with E. L. Eagley on the land for twenty-eight years prior to his death. Eagley and plaintiff, each in the middle seventies, were in Eagley's automobile on their way to see a physician when Eagley had a heart attack and died on October 7, 1948. The car ran into a ditch, pinning plaintiff therein with Eagley, and it was an hour before she was found and released.

Eagley willed all his property to plaintiff, and appointed her executrix. He had moneys in banks at Metz and at Rich Hill; United States bonds and other personal property, the forty acres here involved, and thirty-five acres across the line in Bates county, Missouri. His personal estate approximated $8,500.

[319] Following Eagley's death, plaintiff stayed a few nights at Jessie Williamson's and a few nights at Russell Williamson's, and Jessie stayed with plaintiff several nights. About October 18, 1948, plaintiff asked for Russell and after the evening meal when the parties were together plaintiff asked Russell how he would like to have "Uncle Ed's farm." Russell answered that if she priced it where he could pay for it, he would try to buy it. Plaintiff said: "No, that is not what I mean. I promised Ed that I would give you and Jessie the farm after I am through with it. I wanted to deed it to you and keep a life estate in it." Russell answered: "If you want to do that, I appreciate it." This was the testimony of

Jessie Williamson and Russell Williamson. It was stipulated that Russell's wife, Constance, would testify to like effect.

The lespedeza seed had been harvested and was on the truck on October 21, 1948, when plaintiff and Jessie went to town. H. E. Sheppard, a lawyer of Butler, Missouri, was assisting plaintiff in the administration of the Eagley estate; and the two went to his office to ask him whether the seed should be stored or sold. While there, plaintiff instructed Judge Sheppard to draft a will giving all her property to defendants, and she executed it.

Plaintiff and Jessie went to Judge Sheppard's office again on October 25, 1948, Jessie thought to select the appraisers of the estate, and while there plaintiff asked Judge Sheppard to prepare, and she executed and acknowledged, deeds conveying her real estate to defendants, reserving a life estate for herself, stating, according to Judge Sheppard, that she had no one to look after her but Jessie, and she wanted them to have what she left.

The deed conveying the Vernon county land recites a consideration of "one dollar and other consideration," and reserves "to the grantor a life estate in said premises." The deed was recorded October 27, 1948.

Plaintiff visited Lester Clayton, a nephew, and his wife, Myrtle, in Kansas City for ten days at Christmas, 1948.

Alfred Eastland testified to the effect that in February, 1949, he visited plaintiff, and when plaintiff mentioned that someone was interested in the farm, he informed her that according to the newspapers she had disposed of it. Thereupon plaintiff started crying and said she had not signed any deeds.

Plaintiff testified she had no recollection whatever of signing a will on October 21, 1948, or the deeds; that she first learned of the deeds when Mr. Eastland told her; that she telephoned the Claytons and they came the next morning; that also the next morning she asked Russell Williamson why Jessie and he had taken her home from her; that Russell answered, in effect, that we had to do something; we thought you were going to die and we did not want Aunt Lizzie (Eagley's sister) in on it. Lester's wife took plaintiff to Judge Sheppard's office and, upon being shown the deeds, plaintiff admitted her signature but did not remember signing them. Plaintiff testified she had no intention to convey the land to defendants, or either of them. She served a demand in writing upon each defendant for a reconveyance of the land to her prior to suit.

Mrs. Clayton testified she took plaintiff to Judge Sheppard's office the first day she was at plaintiff's after the Claytons responded to plaintiff's telephone call. Plaintiff executed a new will, dated February 11, 1949, naming the Claytons as her sole beneficiaries. On February 26, 1949, plaintiff transferred the Government bonds so they would pass to Lester Clayton or his wife at her death. Later

the Claytons purchased a new automobile and plaintiff allowed her old automobile to be traded in on the purchase price. She also transferred her bank deposits to a bank in Kansas City.

On March 2, 1949, plaintiff went to live with the Claytons in Kansas City, and this suit was filed on March 7, 1949.

The evidence developed that Jessie Williamson became ill and was confined in a hospital from January 2 until March 3, 1949. She and Russell both testified that plaintiff never personally asked for a reconveyance of the land, and that the first either knew of this controversy was a registered letter, received soon after [320] plaintiff went to Kansas City, demanding the land be reconveyed to her, and the filing of this suit a few days later.

Plaintiff's physical condition had not been good for a number of years. Testimony on her behalf was that for a week to four weeks after Eagley's death she was physically and mentally sick. Different witnesses testified she was in a state of shock, nervous, easily influenced, confused, forgetful of recent events, and incompetent to transact business affairs.

Testimony of the following witnesses covered one or more of the above conditions: George Mendenhall guessed plaintiff knew what she was doing, but that she did not act intelligently on business matters. He worked for and was paid by plaintiff in November, 1948. Mrs. George Mendenhall, plaintiff's cousin, considered plaintiff physically sick and after Eagley's death confused, somewhat like a lost child who did not know just what to do. Plaintiff's cousin Jim Stallcup testified that at times plaintiff was all right and at other times was not all right; that Eagley told him he did not want defendants to have any of his property; that he would not say plaintiff was of unsound mind but she was not competent to do business at Eagley's death or soon thereafter. C. F. Fisher also gave like testimony.

Dr. T. R. McBee, an Osteopath, who treated plaintiff from September 25 up to and after October 25, 1948, stated plaintiff had chronic arthritis and high blood pressure; that her condition became progressively worse; that plaintiff's high blood pressure would tend to make her dizzy and cause her to fall. He thought she was not competent to execute deeds in October, 1948. Witness admitted that plaintiff transacted her business with him.

Mrs. Clayton was of opinion plaintiff's condition was about the same in October, 1948, and February, 1949, but had improved after being under the care of a physician in Kansas City.

Defendants adduced testimony that plaintiff was mentally competent.

Judge H. E. Sheppard represented plaintiff in the administration of Eagley's estate, the preparation of the wills, and the deeds. He never represented either of the defendants. He testified that plaintiff was never in a state of good physical health that he knew of;

that Jessie brought plaintiff to his office in October and plaintiff was nervous; that she had improved some prior to February, 1949; that Jessie did most of the talking but plaintiff told him how to draw up the will on October 21, 1948—she wanted Jessie and Russell to have it all; that when the deeds were executed October 25, 1948, plaintiff said she was not able to take care of herself and that Jessie was the only one helping her, and "I want them to have what I have left"; that she wanted the deed to go to the defendants with a life estate reserved for her; that he did not observe anything about plaintiff which caused him to question her mental capacity to make the deed.

John Sheppard, who took the acknowledgements, also testified he noticed nothing unusual about plaintiff which would cause him to question the transaction.

Shirley Booth handled the funeral of Mr. Eagley. The arrangements were made by plaintiff, assisted by Jessie. He saw plaintiff on October 7, 8, 10, and 27, 1948. He testified that plaintiff was shocked at the time of the funeral; that he explained to her the differences in the caskets and she made the selection. He observed nothing about her conduct or conversation which caused him to question her mental ability to transact business.

Maude Wikoff, who started working at plaintiff's home a few days after Eagley's death, and continued uninterruptedly until December 11, 1948, when her son required her services, testified that plaintiff made the contract of hiring with her and paid her; that plaintiff and defendants were on friendly terms; that Jessie often took plaintiff places; that plaintiff said several times Jessie was good to her, and she hated to call Jessie because Jessie was not well and had much to do; that plaintiff was suffering from shock and nervousness when she first arrived; that plaintiff did not get around very well but [321] she never saw her have any "dizzy spell" or "fall" or anything like that while she was at plaintiff's home; and that there was nothing unusual about plaintiff's conduct or conversation, or anything to indicate she was lacking in mental capacity.

Mr. H. J. Ketchum, President of the Security Bank at Rich Hill, testified he had known plaintiff since 1944 or 1943; that plaintiff and Jessie came to the bank on October 11, 1948, and they made an inventory of Eagley's safety deposit box; that both of the ladies talked about the situation; that the account was transferred to plaintiff's account as executrix on October 21, 1948; that plaintiff handled all the business transactions and no one else was authorized to transact the banking business for her, including making deposits, withdrawals, and checks et cetera; that on February 26, 1949, plaintiff transferred several Government bonds, par value exceeding

$2,200, so as to make them payable to herself or upon her death to Lester S. Clayton and some to Myrtle M. Clayton; that plaintiff's conduct and conversation was that of a woman of average intelligence who knew how to transact business, and he considered her "sane and normal."

Mr. Irl D. Hudson, cashier of the Bank of Metz, gave testimony to like effect, establishing plaintiff's mental competency, as also did Mrs. Betty Pitchford, Mrs. Ed Montgomery, Howard Gill, and others.

Plaintiff testified that she probated E. L. Eagley's will, administered his estate, paid the taxes et cetera, and made final settlement; that Eagley told her to give the place to whoever would take care of her; that she hired Mendenhall and Gill to reroof and paint the barn and paid them; that Mrs. Wikoff was a fine Christian woman; that Russell Williamson had always been kind to her but that Jessie was not kind to her; that Jessie was cross with her, did not do as she agreed to do, but could not tell what agreement Jessie did not keep.

Jack Jenson, whom plaintiff described as a fine boy, testified that while the barn was being reroofed, plaintiff told him she did not have to put the roof on the barn "since she had already deeded the property to Jessie and Russell but that Ed wanted her to do so and that was what she was going to do." When asked about this, plaintiff answered she did not remember.

█ Plaintiff contends, since defendants admitted in their opening statement the deed was a gift, although their answer was a general denial on the issue, that the burden of proof was on the defendants, and that the court erred in not requiring defendants to take the laboring oar; citing Wilkerson v. Wann (Div. No. II, 1929), 322 Mo. 842, 16 S. W. 2d 72, 75[4], 77; Spencer v. Barlow, 319 Mo. 835, 5 S. W. 2d 28, 31[1, 8]; Gay v. Gillilan, 92 Mo. 250, 262, 5 S. W. 7, 10, 11. See also, among others, Re Kaimann's Estate, 360 Mo. 544, 229 S. W. 2d 527, 529[6]; Tygard v. Falor, 163 Mo. 234, 63 S. W. 672, 675(5); Newell v. Edom (Mo. App.), 242 S. W. 701, 702[2]. There are broad statements in some of the cases but we think practically all may be distinguished from the instant case if the facts be considered. The Spencer, Kaimann, Tygard, and Newell cases are sufficiently distinguished and not necessarily controlling here in that each was a proceeding to discover assets under the Missouri Administration laws where the interrogatories and answers thereto constitute the pleadings in the case. §§ 63-67, R. S. 1939; Mo. R. S. A. The burden of proof ordinarily rests upon the party asserting the affirmative.

Wilkerson v. Wann, supra, was a suit to cancel a deed and some broad observations therein are to the effect the defendant had the burden of proof (distinguished from the burden of going forward with the evidence) to demonstrate every essential fact necessary to

the validity of the gift. In suits to set aside a voluntary deed this court has repeatedly said the burden of proof rests upon the plaintiff who seeks to set it aside. McCoy v. McCoy, 360 Mo. 199, 227 S. W. 2d 698, 703 [4, 21]; Key v. Kilburn (Mo.), 228 S. W. 2d 731, 737 [3, 9]; Schneider v. Johnson, 357 Mo. 245, 207 S. W. 2d 461, 466 [4]; Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. 2d 46, 54[3]. [322] Gay v. Gillilan, supra, does not aid, although cited by, plaintiff. It was a will contest and is in harmony with the last mentioned authorities. Consult also 2 Black, Rescission & Cancellation (2d Ed.), 1259, § 504; 38 C. J. S., Gifts, §§ 32, 65; 26 C. J. S., Deeds, §§ 181, 192; 24 Am. Jur., Gifts, §§ 115, 116. The burden of going forward with the evidence may shift in appropriate instances, as where a fiduciary relationship et cetera is established; but the broad statements in Wilkerson v. Wann, supra, with respect to the burden of proof being on the donee by reason of the gift are not in conformity with our later holdings.

We have heretofore set out the facts. There is no question that plaintiff duly executed the deed to defendants. The testimony respecting plaintiff's mental capacity at the time is conflicting. The finding of the trial court is that plaintiff was mentally competent. We believe that the preponderance of the evidence sustains this finding, and there is no ground for our interfering therewith.

Plaintiff claims a confidential relationship was established between plaintiff and defendants, particularly Jessie Williamson. This, without more, is not sufficient to set aside the deed. Loehr v. Starke, 332 Mo. 131, 56 S. W. 2d 772, 778[6]; Key v. Kilburn (Mo.), 228 S. W. 2d 731, 737[8]; 8 Mo. L. R. 188.

Plaintiff and defendants were cousins and friends; but plaintiff, the only person testifying in her behalf on what took place between herself and defendants, said: "Q. Did either of the Williamsons ever talk to you about making the deed or having made the deed? A. No, sir, not that I remember anything about. * * * I can't remember telling them anything. * * * I say I can't remember telling them anything.* * * The Court: She said she didn't remember telling them. The Witness: I don't."

There was no evidence that either Jessie Williamson or Russell Williamson ever exerted any influence whatever upon plaintiff to bring about the execution of the deed. So far as shown of record they did not. Jessie testified she never asked for the deeds. Mere suspicion of or opportunity for undue influence are not sufficient. McCoy v. McCoy, 360 Mo. 199, 227 S. W. 2d 698, 707[16, 17, 23, 25]; Ulrich v. Zimmerman, 349 Mo. 772, 163 S. W. 2d 567, 574[12]; McGirl v. Wiltz (Mo. App.), 148 S. W. 2d 822, 829[10].

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.