Edward J. MUELLER and Lorraine Mueller,
his wife, Appellants,

v.

LeRoy O. MUELLER and Annette M.
Mueller, his wife, Respondents.

No. 46649.

Supreme Court of Missouri,

Division No. 2.

Dec. 8, 1958.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellants.

Maurice L. Stewart, St. Louis, for respondents.

STOCKARD, Commissioner.

Plaintiffs have appealed from a judgment in favor of the defendants in their suit for the cancellation of a deed.

Henry L. Mueller and his wife, Louisa Mueller, owned a two-family flat at 3309 Winnebago Street, St. Louis, Missouri. In September 1953, they conveyed this property without consideration to their sons, Edward J. Mueller and LeRoy O. Mueller, each receiving an undivided one-half interest. Apparently the two sons were not aware of this transfer until sometime after the deed was executed and recorded. In September 1954, Edward and his wife were at his parents' home, which was the lower apartment in the above referred to property, and at that time they executed the general warranty deed which they now seek to have set aside. By this deed they purported to convey to LeRoy all right, title and interest in and to the property. Neither LeRoy nor his wife was present. Edward testified that his mother was then sick and his father had been in the hospital and they were in need of funds, and that his father "asked me to sign a deed of trust which I understood my brother would also execute * * * so that funds could be obtained whenever necessary for a loan on the property." He stated that he thought he was signing a deed of trust so his father "could obtain money to pay hospital bills or anything that was necessary if he needed it." Edward handed the deed to his wife and told her to sign it and she did so. He did not tell her it was a deed of trust. No note was signed, but Edward testified that he knew a note usually accompanied a deed of trust.

The instrument consisted of a single sheet of paper and was the usual printed form of a general warranty deed. Edward and his wife signed at the bottom of the paper, but according to them the deed was folded so that only a small portion thereof was visible and they could not see the words "General Warranty Deed" printed in large letters at the top. Edward demonstrated to the trial court the manner in which he contends the deed was folded when he signed it. He stated that the "blank" places in the part he could see were not filled in, and that he did not know

if LeRoy was named as grantee, apparently because the place for the name of the grantee was covered. Edward testified that he knew and understood the difference between a warranty deed and a deed of trust, and that a warranty deed evidenced a conveyance of property. He also stated that if he had opened the folded instrument he would have seen that it was a warranty deed, but that he did not do so and did not read the instrument because his "father had requested me to sign it and told me that that's what he wanted the money for, and I trusted him explicitly at that time."

Edward and his wife both testified that no notary public was present when they signed the deed. However, Erwin A. Koehler testified that he was a notary public, that he prepared the deed at the request of Henry Mueller and gave it to him, and that several days later, at the request of Mr. Mueller, he went to his home, witnessed the signing of the deed by Edward and his wife and took "the acknowledgment at that time." For some reason he was not asked if he noticed that the deed was folded at the time Edward and his wife signed it.

Subsequent to September 15, 1954, Edward frequently saw LeRoy but he never mentioned to him that he had signed what he thought was a deed of trust on the property. He first learned, according to his testimony, that LeRoy claimed to own all the property in September or October of 1956 when he called LeRoy to tell him that he could not raise the necessary money to take care of hospital and funeral expenses (apparently for his mother), and LeRoy stated in reference to the property in question, "Oh, didn't you know that Pop deeded that to me? I've already made a loan on it to pay these expenses."

Sometime after May 15, 1956, Henry Mueller was admitted to Missouri State Hospital No. 4 at Farmington, Missouri, an institution for the treatment of mental diseases, and he was there at the time of trial.

LeRoy testified that he knew nothing of the deed from Edward and his wife to him until after his father was sent to the State Hospital and when he found a "recorder's card" among his father's papers. The deed was recorded, apparently by Henry Mueller, on November 16, 1955, and LeRoy testified that he had nothing to do with recording it.

After September 23, 1953, Edward did not contribute anything to the support of his parents because "my first wife had just passed away; I bought a new home and I was unable to contribute anything." But, during this period both parents were ill "a great deal," his mother was in a hospital "several times" and was in a nursing home several months prior to her death, and his father was hospitalized in St. Louis before he was taken to the hospital at Farmington. The father had an income of $124 a month and the mother received $35 a month. They also received rent from LeRoy for the upstairs apartment. Hospitalization insurance covered some of the hospital expense but not all. Bills in excess of their income were paid by LeRoy.

The trial court found that Edward and his wife were not entitled to have the deed from them to LeRoy set aside and dismissed their petition.

Plaintiffs, as appellants, contend that the trial court erred in failing to set aside the deed because "(a) The actions of plaintiffs' father, Henry L. Mueller, constituted sufficient fraud to invalidate the deed," and "(b) The defendants claimed plaintiffs' interest in the real estate because of a gift. They therefore, had the burden of proving this gift. They did not carry this burden and the evidence discloses there was no valid gift."

We note that although defendants objected to the admission of any testimony concerning conversations between plaintiffs and Henry Mueller on the basis that at the time of trial Henry Mueller was insane, see Section 491.010 RSMo 1949,

V.A.M.S., the trial court admitted the testimony. However, respondents make no point of this in their briefs, and the case is submitted to this court for decision on its merits based on the record as made.

■ In this appeal in an equity case we review the record de novo and determine the credibility, weight and value of the testimony and evidence in the case, but in doing so we give due deference to the trial chancellor's findings as evidenced by his decree and the fact that he heard the testimony and was able to observe the witnesses and thereby judge their credibility. Nixon v. Franklin, Mo.Sup., 289 S.W.2d 82 [5].

The evidence of plaintiffs, if accepted as true, can be said to authorize a finding that Henry Mueller obtained their signatures to the warranty deed by reason of false representations that the instrument was a deed of trust and that he desired their signatures so that he could use the property as security to obtain a loan to pay hospital and medical expenses. However, contrary to the contention of plaintiffs, there is no evidence whatever which would warrant a finding that LeRoy had anything to do with any false representations, if they were in fact made, or that he had any actual or constructive knowledge thereof. No fraud is shown on the part of LeRoy. Plaintiffs contend that Henry Mueller was LeRoy's agent in obtaining the deed, but they admit that he was "possibly self-appointed."

Plaintiffs have cited to us no case wherein a deed has been set aside because of fraud in the procurement of the deed by a third person who was not acting with the actual or constructive knowledge of the grantee. They cite 26 C.J.S. Deeds § 56 e, but that section, in its material part, reads as follows: "An action to rescind a deed will not be sustained merely because of fraudulent representations by a third person who did not act under the authority of defendants, and which they neither participated in, nor had notice of.

If, however, the grantee is a party to the fraud, the deed may be set aside. So, the deed may be set aside because of the fraud of one who is acting in the transaction as the agent of the grantee, as where the deed was obtained by a parent for his child." Plaintiffs rely on the last sentence, but if the general rule as stated in the first sentence is to be accepted, we doubt if the relationship shown in this case, standing alone, was intended to be included in the general statement to the effect that a parent would automatically be the agent for his child. Here the grantee was a "child" who was a mature married man living separate and apart from the parent. In addition, the grantor in this case was also a "child," and if relationship alone creates the agency it could just as well be said that the parent was acting as his agent.

■ Assuming however, the existence of fraud on the part of Henry Mueller, we question the application of the general rule stated in the first sentence of the above quotation to the factual situation in this case. We are more favorably impressed with the argument that fraud in the procurement of a written instrument vitiates it in the hands of anyone, who is not a bona fide purchaser for value, who seeks to benefit thereby. See Logue v. Von Almen, 379 Ill. 208, 40 N.E.2d 73 [23], 140 A.L.R. 251.

■ The decision, therefore, to be made is whether plaintiffs have, by what is termed clear, cogent and convincing evidence, see Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59, 67, established that a court of equity should exercise its "most extraordinary power," which it should exercise only when clearly justified from all the evidence, Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493 [11], and set aside the deed from Edward and his wife to LeRoy on the basis that they executed this deed as the result of fraud practiced upon them.

Edward testified that he was a discount teller at a bank at the time of trial, that he had also worked as a commercial teller at another bank for three years, and had worked for a third bank for about twenty-five years and had been manager of the stock transfer department. He, therefore, clearly was not ignorant or inexperienced in ordinary business transactions. He owned his own home and had previously executed warranty deeds and deeds of trust, and he testified that he knew and understood the difference between a deed of trust and a general warranty deed. Edward admits that he had the deed in his actual possession because he testified that he handed it to his wife to sign. His story that at the request of his father he knowingly signed an instrument consisting of one page, which when presented to him for his signature was folded in such a manner that he could see practically none of it except the place where he signed, is not readily convincing. People with Edward's experience in the business world do not do such things even at the request of their father, and if they do they are then in an awkward position to ask a court of equity to remedy an error resulting from such gross negligence or indifference. At the time the deed was signed the father was accumulating medical and hospital expenses in excess of his income. LeRoy had been personally paying bills of his parents in excess of their income, and on the other hand, Edward admits he had contributed nothing to the maintenance of his parents. Conditions at that time indicated that additional money would be needed to pay hospital and medical bills, and previous experience would reasonably indicate to the father that he could not look to Edward to get the money. Under these circumstances it is readily apparent why the father might have wanted the title of the property to be in LeRoy's name.

The trial court undoubtedly did not believe the story of the plaintiffs. This is obvious from the result reached. They were contradicted by the notary public as to whether he was present when the deed was signed, and they testified that the deed was "blank" and then modified this somewhat when asked how they knew it was blank if the deed was folded. It is true that except for these matters their testimony was uncontradicted, but the trial court did not need to believe their testimony even though it was uncontradicted. As stated in Poole v. Campbell, Mo.Sup., 289 S.W.2d 25, 32, "The fact that the witnesses were not contradicted is of course not decisive," and reference was there made to Sulgrove v. Sulgrove, Mo.Sup., 215 S.W.2d 490, which was decided for the defendant both in the trial court and on appeal although defendant offered no witnesses.

The solution to this case turns primarily on the credibility of the witnesses and the evaluation of their testimony. The trial chancellor, in contrast to this court, in determining their credibility had the opportunity to hear them and observe their demeanor on the witness stand. In such a situation a reviewing court will give due regard to the better opportunity of the trial court to pass on the credibility of the witnesses who orally testified before him, and while it has the authority to make its own findings, it will not set aside a judgment under such circumstances unless it is clearly erroneous. Davis v. Roberts, 365 Mo. 1195, 295 S.W.2d 152 [4]; Turner v. Mitchell, Mo.Sup., 297 S.W.2d 458 [8]; Maas v. Dreckshage, Mo.App., 244 S.W.2d 397 [3]. Because of the apparent inconsistencies in plaintiffs' testimony, the conflict with the testimony of the notary public, and the unrealistic story of a person with Edward's experience and background signing a folded instrument without reading it, the trial chancellor certainly was not entirely unjustified in refusing to accept plaintiffs' testimony at face value. When we take these matters into consideration, and also consider the circumstances of Henry Mueller's financial problems and the fact that

LeRoy and not Edward had been helping him in time of need, the record, when considered as a whole, does not affirmatively show that the trial chancellor was in error in the result he reached, and it does not contain convincing evidence which indicates that we, in our discretion, should not defer to his findings on the issue of whether the deed to LeRoy was procured by fraud.

Plaintiffs' second point is that since defendants claimed the property as a gift, they had the burden of proving the gift, which they did not do, and by way of argument they assert there was no evidence of a delivery of the deed. This contention is without merit for two reasons. First, there was no mention of this contention, directly or by inference, in the after-trial motions. Even in an equity case where the appellate court reviews the evidence de novo allegations of error not presented to the trial court in a motion for new trial cannot be presented to the appellate court for review. Nichels v. Witschner, Mo.Sup., 270 S.W.2d 848 [2]; Aetna Insurance Company v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164 [3]. Second, the theory of plaintiffs' case was that the deed to LeRoy should be set aside because of fraud in the procurement. They did not seek to have it set aside because there was no valid gift or because there was no delivery. The burden of proving fraud was upon the plaintiffs, and there was no burden on the defendants to prove in this suit that there was a valid gift.

Plaintiffs cite Ridenour v. Duncan, Mo.Sup., 246 S.W.2d 765, and Wilkerson v. Wann, 322 Mo. 842, 16 S.W.2d 72. In the Wilkerson case there is language to support plaintiffs' contention, but of that language this court in Stallcup v. Williamson, 361 Mo. 440, 235 S.W.2d 318, at pages 321–322, had this to say: "Wilkerson v. Wann, supra, was a suit to cancel a deed and some broad observations therein are to the effect the defend-

ant had the burden of proof (distinguished from the burden of going forward with the evidence) to demonstrate every essential fact necessary to the validity of the gift. In suits to set aside a voluntary deed this court has repeatedly said the burden of proof rests upon the plaintiff who seeks to set it aside. McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703 [4, 21]; Key v. Kilburn, Mo.Sup., 228 S.W.2d 731, 737 [3, 9]; Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 466 [4]; Lastofka v. Lastofka, 339 Mo. 770, 99 S.W.2d 46, 54 [3]. * * * The burden of going forward with the evidence may shift in appropriate instances, as where a fiduciary relationship et cetera is established; but the broad statements in Wilkerson v. Wann, supra, with respect to the burden of proof being on the donee by reason of the gift are not in conformity with our later holdings." In the Ridenour case, although it cites the Wilkerson case, it is stated that under the circumstances there presented the defendant "had the burden of going forward with the evidence certainly to the extent of establishing sufficient facts necessary to the validity of said deed to rebut other evidence in the case defeating the claimed gift." 246 S.W.2d 767. We have previously determined that the other evidence in this case, which is the evidence upon which plaintiffs rely, does not defeat defendant's claim to title. Therefore, in addition to the fact that defendants did not have the burden of proof, they also did not have the burden of going forward with the evidence.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.