**C. (Chet) E. JENNINGS and Ethyle Jennings, Respondents,**

v.

**Elsie ACHUFF, Defendant, Betty Carr and Pearl Reed, Appellants.**

No. 44206.

Supreme Court of Missouri.

Division No. 2.

Nov. 8, 1954.

Esco V. Kell, West Plains, for appellants.

Green & Green, Will H. D. Green, H. D. Green, West Plains, for respondents.

TIPTON, Presiding Judge.

This is an action for specific performance of an oral contract whereby Harold C.

Dowler, deceased, agreed to devise lots 5 and 7 in block 1, Graham's Addition to the City of West Plains, Missouri, to respondents, C. (Chet) E. Jennings and his wife, Ethyle Jennings, for certain labor performed by them during his lifetime. The trial court decreed specific performance of the oral contract.

Respondent Ethyle Jennings, defendant Elsie Achuff and Harold C. Dowler were sisters and brother. Appellants Betty Carr and Pearl Reed were their nieces. The deceased was a bachelor and was owner of the above described real estate, which had a residence on it. Respondent Chet Jennings was a carpenter by trade. From 1940 to 1945 the deceased and respondents lived in the house situated on this property and during this period of time Jennings worked at his trade away from West Plains. In 1945 while Jennings was home visiting his family, the deceased was in the process of building a house on lot 6 of Graham's Addition. This lot adjoined the deceased's residence property. During this visit of respondent Jennings, the deceased and his carpenter had some difficulty. Deceased asked Jennings to give up his position and finish building deceased's new residence. Jennings' labor and expenses in finishing the residence amounted to $700.

The oral contract entered into between the respondents and deceased also provided that if respondents would continue to occupy the old residence, make necessary repairs and improvements thereon and release Dowler from the payment of $100 due Jennings, the deceased would give respondents the old residence and premises as their absolute property. Respondents complied with their part of the contract and Ethyle Jennings continued to look after the welfare of the deceased. She did his washing and ironing, and cooked his meals. Respondent Chet Jennings made repairs and additions to the old residence which, including the labor and material, was worth $5,000.

Jennings completed deceased's new residence in the year 1945 and deceased moved into it, while Jennings and his wife continued to occupy the old residence.

Dowler died in December, 1952, intestate and without delivering a deed to the respondents to such property.

The appellants' answer was a general denial and a plea of the statute of limitations and the statute of frauds.

Defendant Elsie Achuff filed an answer admitting the truth of respondents' petition.

Margaret Levish testified that she is a daughter of respondent Ethyle Jennings by a previous marriage; that she was in West Plains in the year 1945 when respondent Chet Jennings was finishing the construction of the new home for deceased; and that after that residence was finished the deceased told her that "he couldn't afford to pay for the finishing of his house and he had an understanding with mother and stepfather that if they finished his house for him and took care of his house then he would give them that house." This witness also testified as to other conversations with deceased, and as to numerous repairs and additions made by respondent Jennings on the new and old houses.

John Humphries, C. R. Lashley, Paul Buff and John Stein all testified to the effect that deceased had told them that the old house belonged to respondents.

John Young testified that he was manager and part owner of the Swanson Lumber Company, and that respondent Chet Jennings paid for approximately $600 worth of material used in repairing the old house. He also testified that he owned adjoining property and that respondent Chet Jennings, deceased and he each paid one-third the cost of surveying these lots.

There was also testimony to the effect the respondents paid the taxes on the old house, although the receipts were in the name of the record owner.

The testimony of witnesses for appellants was to the effect that they knew the deceased and had known him for some years, but that they had never heard deceased mention the fact that the old house belonged to the respondents.

Appellants contend that the alleged contract is an oral one and is, therefore, barred by the statute of frauds, and that there can be no recovery of such a contract, even after performance of the contract by respondents, unless the proof of the alleged oral contract is such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was, in fact, made.

▮ Appellants cite the case of Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024, to show what is necessary to prove an oral contract made with a deceased person by a party still living in order to take the cause out of the statute of frauds by a court of equity where the oral contract was performed by the party still living. Equity will interfere only in cases where it would be a fraud on the person still living to enforce the statute of frauds.

▮ In the case of Thompson v. St. Louis Union Trust Co., 363 Mo. 667, 253 S.W.2d 116, loc. cit. 120–121, cited by respondents, we quoted with approval from the case of Walker v. Bohannan, supra, the circumstances under which a court of equity will enforce an oral contract made with a deceased person, which are as follows:

" ' "(1) The alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had." ' * * *

"Undoubtedly the proof of the agreement and consideration must be clear, explicit and definite. However, it is not necessary that the agreement be established by direct evidence. It may be supplied by competent witnesses who testify to admissions of the deceased party to the agreement, or an express promise may be shown. Evidence is also admissible of such facts and circumstances, such as relations of the parties, so as to give rise to an implication that such an agreement was made, and such implication may have reinforcement from evidence of the conduct of the parties at the time of making the agreement, and subsequently. Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910."

▮ Measured by the above rules, we think the evidence outlined clearly shows that the contract as alleged by respondents was entered into by them and the deceased. The evidence in the case at bar complies with all the conditions enumerated in the case of Walker v. Bohannan, supra, and Thompson v. St. Louis Union Trust Co., supra, necessary to take this case out of the statute of frauds in an equitable action.

We hold the decree of the trial court was for the proper parties and, therefore, affirm the trial court's decree.

LEEDY, Acting P. J., ELLISON, J., and ANDERSON and CAVE, Special Judges, concur.