Frank J. BILDNER, Plaintiff-Respondent,

v.

Fred GIACOMA, Extr. of Estate of Joseph Gucciardo, Deceased, and Concettina G. Smith, Defendants-Appellants.

Nos. 35550 and 35551.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 4, 1975.

Rehearing Denied April 14, 1975.

84

Thomas M. Gioia, St. Louis, for defendants-appellants.

Dempsey, Dempsey & McCarthy, Richard B. Dempsey, Clayton, for plaintiff-respondent.

KELLY, Judge.

These two appeals consolidated in this court are from a judgment of the St. Louis County Circuit Court ordering specific performance of an oral contract to devise two parcels of real estate to the respondent and denying the counterclaim of the appellant-executor for a sum of $26,000.00 he alleges was loaned to the respondent by his decedent prior to death and which remains due and unpaid.

The parties shall hereinafter be identified in the position they occupied in the trial court: i. e., Mr. Bildner as the plaintiff, Mr. Giacoma, the defendant-executor, and Mrs. Smith, the defendant.

Since some of the facts are undisputed, we shall set them out at this point. Emma Rose Gucciardo and Joseph Gucciardo were husband and wife; when they married is not revealed in the record. Frank Bildner, the plaintiff, is the natural son of Emma Rose Gucciardo and the step-son of Joseph Gucciardo. Mr. Gucciardo never adopted Frank Bildner. Concettina G. Smith is the natural daughter of Joseph Gucciardo from a prior marriage; she was never adopted by Mrs. Gucciardo after her marriage to Joseph Gucciardo. Fred Giacoma is a long-time friend of Joseph Gucciardo who witnessed Mr. Gucciardo's last will and testament and was named and has been appointed by the probate court of St. Louis County as executor of the estate of Joseph Gucciardo, deceased. Sometime in 1941 the Gucciardos and one Tony Dorsch purchased two unimproved parcels of ground situated at 9925 Lewis & Clark Boulevard, St. Louis County, Missouri, each holding a one-half interest therein. In the same year they constructed and commenced the operation of a service station business on the parcels selling Shell Oil Company products. They continued the operation of this business until 1957 when they leased it to the Shell Oil Company. Emma Rose Gucciardo died on March 8, 1967, and Joseph Gucciardo on May 5, 1970. Prior to his death, on July 18, 1967, Joseph Gucciardo executed his last will and testament wherein after providing for the payment of his just debts, funeral expenses and expenses of his last illness, he made certain specific bequests to his daughter, Mary Dempsey, to his nephew's widow, Jean Gucciardo, and to his daughter, Concettina G. Smith, one of the defendants in this case. In the residuary clause of this will Joseph Gucciardo be-

queathed all the rest, residue and remainder of his estate to his daughter, Concettina G. Smith and his stepson, Frank J. Bildner, each to take a one-half share. He further directed that Mr. Giacoma be named executor of his estate. This will, as heretofore stated, was admitted to probate, and at the time of trial was still in the process of probate.

On December 15, 1970, the plaintiff instituted this suit alleging that at the time of Mr. Gucciardo's death, the decedent owned a one-half interest in fee simple in the two parcels of land on which the service station business was situate; that "On some date unknown now to the plaintiff, but in the year 1941, the plaintiff entered into an oral agreement with the decedents, Emma Rose Gucciardo and Joseph Gucciardo *to the effect* that if the plaintiff *agreed to work* at the Shell Service Station located on the said parcels of real property and then operated in part by the two decedents, the surviving decedent would, by his or her will, devise his or her interest to the plaintiff." (Emphasis supplied). He further alleged that in reliance on these promises from 1941 up to and including 1957, at which time the Gucciardos and Mr. Dorsch ceased operation of the Shell Service Station and leased it to some person unknown to the plaintiff, he, the plaintiff, worked at the service station for the Gucciardos and did perform valuable services, all without compensation. He further alleged that in direct violation of the terms of this agreement Joseph Gucciardo on July 18, 1967, made and executed his will which has been admitted to probate and by which the decedent attempted to devise his interest in these parcels of real property, as part of the residue of his estate, in equal shares to the plaintiff and defendant, Concettina G. Smith. He further alleged that he had no adequate remedy at law and prayed that the court make and enter its decree awarding him the entire interest in said parcels of real property, that it order and direct the executor to make and execute his executor's deed to the plaintiff and deliver same to him, that

it direct the executor to pay over to the plaintiff the proceeds of the lease accruing to the estate together with interest thereon from and after the date of death of Joseph Gucciardo; that the court declare the specific bequest of the real property of the deceased located at 11855 North Ranch Drive to the defendant Concettina G. Smith to be null and void as in direct conflict with the provisions of the contract entered into between Joseph Gucciardo and the plaintiff; that the court further order and direct the executor of the estate to pay all specific bequests of cash out of the proceeds of the sale of the real property at 11855 North Ranch Drive, and for whatever other orders and decrees seem fit and proper. In Count II of his petition the plaintiff realleged all the allegations in Count I, further pleaded that the reasonable value of his services rendered to Joseph Gucciardo was in the amount of $19,760.00 and prayed the court that in the event he was denied relief under Count I of his petition he be awarded damages in the amount of $19,760.00, together with interest prorated over the period 1941 through 1957.

Defendant Smith filed her Answer to both Counts of plaintiff's petition admitting the residency of the parties, the accuracy of the descriptions of the two parcels of land, that Mr. Giacoma is the executor of the estate, the alleged interest of the decedent in the real property and the service station business, that said interest was jointly owned by the Gucciardos until the death of Mrs. Gucciardo on March 8, 1967 and denied each and every other allegation in the petition. As affirmative defenses she pleaded the Statute of Frauds, § 432.-010 RSMo 1969, V.A.M.S., and the 5 and 10 year Statutes of Limitations, §§ 516.120 and 516.110 RSMo 1969, V.A.M.S. She also alleged that if the allegations made by the plaintiff in his petition are proved then payment has been made of his alleged claim by the terms of the will of Mr. Gucciardo and acceptance of the claimed gift as alleged by the plaintiff himself. The Answer filed by the defendant-executor is

in the same terms as that filed by defendant Smith.

The defendant-executor, in addition to his Answer filed a counter-claim, alleging that on July 7, 1967, and July 18, 1967, his decedent delivered to the plaintiff Cashier's Checks in the amounts of $1,000.00, $4,000.00, $15,000.00 and $6,000.00, totalling $26,000.00, of the North County Bank, the Unity Savings & Loan Association and the Baden Bank as a loan to the plaintiff upon the promise of the plaintiff that he would have executed and delivered to the decedent a note and Deed of Trust secured by real estate at 6922 Willow Wood, St. Louis County, Missouri, which the plaintiff and his wife were then purchasing for an amount of $26,000.00; that said note and Deed of Trust were to be executed by both the plaintiff and his wife; that said note and Deed of Trust were never thereafter delivered to the decedent and at the death of the decedent the indebtedness in the sum of $26,000.00 had not been paid and was still due and owing, plus interest thereon from the 18th day of July, 1967. He prayed judgment in that amount. Plaintiff filed a reply to the counter-claim admitting receipt of the money, alleged that it was a gift, and denied each and every other allegation in said counter-claim.

After trial to the court on May 30, 1973, a judgment was entered on Count I of plaintiff's petition wherein it was ordered and decreed that whatever right, title and interest Joseph Gucciardo had in the real estate described in paragraph 2 of Count I of the plaintiff's petition, known as 9925 Lewis and Clark Boulevard, be vested in plaintiff free and clear of any claims of the defendants and to take priority over any bequest or provisions in the last will of the deceased, Joseph Gucciardo, to the contrary. It was further decreed that the plaintiff was entitled "to any and all rents from said real estate which the deceased Joseph Gucciardo and/or his estate received from and after his death." Count II of plaintiff's petition was dismissed "as same was a request in the alternative for relief

in the event no relief was given to plaintiff under Count I." Judgment was also entered in favor of the plaintiff on the counterclaim of the defendant-executor.

██ Both defendants filed motions to amend the judgment, order and decree, and in the alternative, for a new trial. These motions were taken as submitted and denied, whereupon both defendants filed notices of appeal "from the order denying his (her) Motion to Amend Judgment, Order and Decree, and in the alternative his (her) Motion for New Trial, entered in this action on the 27th day of June, 1973." While these notices of appeal were timely filed, it is painfully apparent that they are completely ineffectual to bring anything before this court for review. The denial of a motion of this type is not an appealable judgment. § 512.020 RSMo 1969, V.A.M.S.; A―――― v. A――――, 493 S.W.2d 660, 661 (Mo.App.1973). Although we would be justified in dismissing this appeal sua sponte, we shall nevertheless exercise our discretion and consider the appeal to be taken from the judgment and decree of May 30, 1973.

██ In reviewing an appeal from a decree ordering specific performance of an alleged oral contract by decedent our duty under Rule 73.01(d), V.A.M.R., is to review the case upon both the law and the evidence, not set aside the decree unless clearly erroneous, and give due regard to the opportunity of the trial chancellor to judge of the credibility of the witnesses. Webb v. Webb, 498 S.W.2d 757, 758[1] (Mo.1973). When an oral contract made with a deceased has been performed by the party still living and it would be a fraud on that party to enforce the statute of frauds, equity will interfere to decree specific performance of the contract; but, the party seeking specific performance will be held to clear and convincing proof and the agreement must be explicit and supported by adequate consideration. Watkins v. Watkins, 397 S.W.2d 603, 609[2] (Mo. 1963). The law applicable in such cases is

settled, and he who invokes the power of a court of equity to decree specific performance of an alleged oral contract seeks to avail himself of an exception to the statute of frauds, which exception is sparingly used and only in those instances where the strict letter of the statute would perpetrate a fraud upon the plaintiff. Steere v. Palmer, 359 Mo. 664, 223 S.W.2d 391, 392[2] (1949). He carries a heavy burden of proof, i. e., proof of the alleged oral contract must be such as to leave *no reasonable doubt* in the mind of the chancellor that the contract was in fact made. Steere v. Palmer, *supra,* l.c. 393[3]. The criteria against which each case must be measured was set out in Walker v. Bohannan, 243 Mo. 119, 139, 147 S.W. 1024, 1028[1] (Mo.1912) and is still the applicable law in this state. The court in Walker said, l.c. 1028: "Title to real estate should not slumber in oral contracts to convey. The very conscience of the court must be touched by the facts of the particular case before the exception to the statute will be called into play. The statute of frauds had its origin in the dangers which developed in permitting the title to real estate and contracts as to other weighty matters to rest in parol. Courts weighing evidence by the usual rules were constantly enforcing contracts, which were thought to have been proven by false and perjured testimony. The statutes were not only a boon to property interests, but to the courts as well. Not only so, but it removed from society the temptation to acquire property and property rights through fraud and perjury. With the acquired experience the courts had gained before the passage of the original statutes of frauds and perjuries, they were slow to ingraft thereon any exception to the iron-clad rule of the statute. Later, however, it became apparent to courts of conscience that frauds were being perpetrated under the strict letter of the statute. To obviate these frauds, the exception to the statute here invoked was adopted by courts of equity, but not without well-defined rules of procedure—rules, which like the statute itself, would be a safeguard as against the perpetration of frauds."

■ These rules, mentioned in Walker, are: "(1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract *as alleged* was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is *referable solely* to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had." Walker v. Bohannan, *supra,* l.c. 1028. (Emphasis supplied).

The issue in this case is whether under the evidence the aforesaid rules have been satisfied.

■ In reviewing the evidence we exclude from our consideration the testimony of Frank J. Bildner, the plaintiff, which was admitted over the defendant's objection that the witness was the plaintiff in the cause and his testimony was barred by the Dead Man's Statute. One of the defendants in this cause is Fred Giacoma, Executor of the Estate of Joseph Gucciardo, deceased, and § 491.010 RSMo 1969,

V.A.M.S., provides "that in actions . . . where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor . . . except as to such acts or contracts as have been done or made since probate of the will . . ." This provision, disqualifying an adverse party from testifying as to acts and contracts which occurred prior to the probate of the will is an arbitrary provision, and is not open to construction. In re Estate of Tomlinson, 493 S.W.2d 402, 403[3] (Mo.App.1973); Birdsong v. Estate of Ladwig, 314 S.W.2d 471, 475[3] (Mo.App.1958). Defendants' contention that the trial court erred in admitting this testimony is well taken; however, since we will not consider this testimony in disposing of the other contentions presented by the defendants we conclude that this trial error alone cannot be considered prejudicial if the other evidence, taken as a whole, supports the judgment of the trial court.

■ The alleged oral contract sued upon is pleaded in the plaintiff's petition as an agreement between the plaintiff and both Emma Rose Gucciardo, his mother, and Joseph Gucciardo, his step-father, *"to the effect* that if the plaintiff *agreed to work* at the Shell Service Station located on the said parcels of real property then operated in part by the two decedents, the surviving decedent would, by his or her Will, devise his or her interest to the plaintiff." (Emphasis supplied). With this in mind we must then proceed to apply the evidence in the case against the Rules set out in Walker v. Bohannan, *supra.*

This record is absolutely devoid of any direct evidence that the agreement pleaded was the contract between plaintiff and the Gucciardos. There is not one iota of direct evidence relative to the terms of the agreement itself in the record. No witness offered by the plaintiff testified that he or she was present when the alleged agreement was entered into. Mrs. Bildner, plaintiff's wife, testified that between 1941 and 1957 she, on at least 12 separate occasions, was present when there was a discussion relative to her husband's compensation for work performed at the service station. Mr. Gucciardo would say, she testified: "That he would receive *the* interest in the station." (Emphasis supplied). The reason, according to Mr. Gucciardo she testified, was: "Because he helped build up the station from the time it was erected until *1957;* he worked." Obviously if this reason was stated as Mrs. Bildner testified the conversation had to have occurred sometime subsequent to 1957 and could not be one of the 12 conversations occurring "between" 1941 and 1957.

Mrs. Florence Marrazza, the sister-in-law of Joseph Gucciardo, testified that over a period of years the Gucciardos visited her and her deceased husband in their home in Gary, Indiana, on four or five occasions. On one of these occasions she testified that she inquired of the Gucciardos: ". . . when they's come who was taking care of their business . . . And they answered by saying they could get away from their filling station because Frank was taking care of it; at (sic) the long run it would be his anyway." She was asked if Mr. Gucciardo told her whether Mr. Bildner was being paid for his services, and she responded: "He said he wasn't being paid."

Mrs. Norma Davis, plaintiff's sister-in-law, testified that on two separate occasions she was present when Mr. Gucciardo and Mrs. Gucciardo said: "That someday their property would be his. Because he was their son and helped." One of these conversations took place in 1959 and the other in 1960. She further testified: "I don't remember the exact words; just that he had worked with him to develop the filling station and he was their son."

In not one of these conversations is there any reference to an agreement or to the agreement as pleaded. The difficulty with plaintiff's position is that he attempts to establish the terms of the contract by evidence that he did perform services at

the service station between 1941 and 1957 without compensation. In addition to the testimony of his wife, other witnesses who testified that they saw plaintiff perform services at the service station premises are Mrs. Marrazza, Mrs. Davis, Mr. Gerhard Lindemann and Edwin Fusch. The last two gentlemen were customers of the service station. However, none of them testified that, as in Ver Standig v. St. Louis Union Trust Co., 344 Mo. 880, 129 S.W.2d 905 (1939), they heard Mr. Gucciardo state that he had *agreed* to will the property to plaintiff in exchange for these services. Performance of the services in evidence here are as consistent with an agreement as alleged by the plaintiff as they are with the hope that thereby the plaintiff would ingratiate himself to the decedent step-father so that he would be a legatee of the will; they simply do not point to performance in accord with the alleged oral agreement beyond a reasonable doubt.

Both parties to this appeal have cited a number of cases in support of their respective positions. We find that in most instances the cases cited support one legal principle, viz., that in cases of this type each case must stand on its own particular set of facts, and we decide the case on the facts as we find them. We conclude that we are not here faced with the question whether we defer to the findings of the trial court where the question of credibility is concerned; for, taking the plaintiff's evidence in its best light we hold that it does not establish the agreement as pleaded and therefore the trial court was clearly erroneous in decreeing specific performance of the alleged oral contract.

Our next consideration is the defendant-executor's appeal from the judgment of the trial court on his counter-claim. His evidence, supplied by Mrs. Smith, was that sometime after July 18, 1967, Mrs. Bildner came to the home of Joseph Gucciardo in Florissant, Missouri, where, in her presence, Mr. Gucciardo gave Mrs. Bildner checks totalling $26,000.00 with which to purchase a new home and told Mrs. Bild-

ner that he expected her to bring the "mortgage papers" back to him signed. At some later date Mr. Gucciardo told Mrs. Smith that Mrs. Bildner had not brought the "mortgage papers" back to him but that they, the Bildners, would pay him. The defendant-executor testified that he first learned of this transaction after the death of Mr. Gucciardo and that he filed the counter-claim at the direction of his counsel. He admitted that at no time during Mr. Gucciardo's lifetime did the deceased tell him that Mr. Bildner owed him $26,000.00. The plaintiff introduced the testimony of Davie Cooper Scheitlin, a real estate broker for whom Mrs. Bildner worked, who testified that during the first week of July, 1967, and prior to the closing of the purchase of a home by the Bildners, the plaintiff, his wife, Ms. Scheitlin and Joseph Gucciardo were in the Scheitlin living room after they had inspected the residence the plaintiff and his wife subsequently purchased. Ms. Scheitlin had prepared a deed of trust and a promissory note for $26,000.00 which were to secure the monies Joseph Gucciardo was advancing to the Bildners so they could close the deal on the house. Ms. Scheitlin handed the deed of trust and the promissory note to Mrs. Bildner, who was to hand them to Mr. Gucciardo, but Mr. Gucciardo said he did not want them, that the money was a gift. Prior to the closing sometime later in July, 1967, Mrs. Bildner brought the check for $26,000.00 to her; she did not bring the deed of trust.

■ Defendant-executor contends the trial court erred because the evidence proves that at the time the $26,000.00 was delivered to the plaintiff there was no intent on the part of Mr. Gucciardo to make a gift. He argues that the claimed gift was not proven by clear and convincing testimony, beyond a reasonable doubt. This burden, he contends, rests with the plaintiff in this case. He cites no Missouri cases in support of his position but does rely on 38 C.J.S. Gifts, § 67e, which states "The courts view with suspicion

claims of gifts inter vivos first asserted after the death of the alleged donor, and require clear and convincing evidence to sustain them, some courts saying that in such a case a mere preponderance will not suffice." Most of the cases we have read so holding are those in which the estate has filed interrogatories for the discovery of assets in the probate court. In re Harlow's Estate, 239 Mo.App. 607, 192 S.W.2d 5, 13 (1945); Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28, 32[1] (1928); In re Petersen's Estate, 295 S.W.2d 144, 150[8] (Mo.1956). 38 C.J.S. Gifts § 65b, states: "On the other hand, if defendant merely pleads a denial to a complaint seeking to recover money or property, as in the case of an alleged loan, the burden of proof has been held to rest on plaintiff throughout the trial, although the burden of the evidence may shift to defendant with respect to his claim of a gift." This rule of law has been followed in Roth v. Roth, 142 S.W.2d 818, 823[6] (Mo.App.1940) a suit by an executrix to recover monies allegedly loaned to the defendant, where the Court said:

"Where the question of gift arises by way of confession and avoidance, the burden of proof is, of course, upon the one asserting the gift, but such is not the situation here. Under the pleadings in this case, plaintiff alleged in the second count of her petition that the money had been loaned to defendant, who, by his answer, merely denied such allegation generally. While in the course of his evidence defendant admitted the receipt of the sums of money referred to in the second count of the petition, he did not admit that such sums had been loaned to him as alleged therein, but on the contrary, by way of showing that plaintiff's cause of action had never existed, undertook to show that such sums had been received by him as gifts and not as loans. Distinguishing between burden of proof and burden of evidence, defendant unquestionably had the burden of evidence in the matter of establishing the fact that he had received the particular sums as gifts, but the burden of proving the cause of action asserted, that is, that the money had been loaned by the deceased to defendant, rested upon plaintiff, who, by charging such fact in her petition as the basis of her cause of action, had assumed the affirmative of the proposition, which she was obliged to sustain through the entire progress of the case."

The reply filed in this case admits receipt of the $26,000.00 but further alleges that it was delivered to the plaintiff as a gift by the decedent. Plaintiff could have filed a general denial and nonetheless introduced evidence in support of his theory of the case that the monies were a gift and he would have had the burden of evidence in this respect; the defendant-executor would nevertheless still have the burden of proving that the money was a loan as alleged in his counterclaim. 38 C.J.S. Gifts § 64, states: "Under a general denial defendant may prove anything tending to show that plaintiff's allegation is untrue. Thus in an action to recover property based on a superior right or title, proof of a gift to defendant may be made under a general denial, it being unnecessary specially to plead the same." This too is the rule in suits to cancel a deed where the defendant contends that the deed was a gift. In Stallcup v. Williamson, 361 Mo. 440, 235 S.W.2d 318, 321[1, 2] (1950), the court said: "Wilkerson v. Wann, supra [322 Mo. 842, 16 S.W.2d 72], was a suit to cancel a deed and some broad observations therein are to the effect the defendant had the burden of proof (distinguished from the burden of going forward with the evidence) to demonstrate every essential fact necessary to the validity of the gift. In suits to set aside a voluntary deed this court has repeatedly said the burden of proof rests upon the plaintiff who seeks to set it aside. . . . The burden of going forward with the evidence may shift in appropriate instances, as where a fiduciary relationship et cetera is established; but

the broad statements in Wilkerson v. Wann, supra, with respect to the burden of proof being on the donee by reason of the gift are not in conformity with our later holdings." We conclude that the burden of proof in this case is upon the defendant-executor throughout and until he establishes a prima facie case that the $26,000.-00 received by the plaintiff was a loan when the burden of the evidence to establish that he received the money as a gift shifts to the plaintiff.

The evidence proffered by the opposing parties in this case is in conflict. Defendant-executor's evidence tends to prove that when the decedent delivered the checks constituting the $26,000.00 purchase price to Mrs. Bildner sometime subsequent to July 18, 1967, he specifically requested that she return to him the "mortgage papers" signed. On some later date the decedent advised Mrs. Smith that Mrs. Bildner had not returned the "mortgage papers" to him as he had requested; nevertheless, he further expressed the opinion that the Bildners would nonetheless pay him. The decedent did not attend the closing nor did he in the interval between July 18, 1967 and May 5, 1970—the date of his death—commence any legal action to recover this money. The evidence is that it was on the same date the decedent obtained the checks from the different depositories he also executed his Will leaving plaintiff a one-half interest in his residuary estate. Almost three years passed prior to his death and so far as this evidence shows the "mortgage papers" were never given to him by the Bildners nor was there any repayment of the alleged loan. We believe that the trial court could consider this fact as corroborative of the plaintiff's contention that the $26,000.00 was a gift and not a loan in view of the fact that the decedent did not change his Will during that interval.

Plaintiff's evidence was the testimony of Ms. Scheitlin that sometime during the first week in July, 1967, and prior to the closing, she prepared a deed of trust and a promissory note for Mr. Gucciardo as se-

curity for the $26,000.00 he was advancing to the plaintiff and Mrs. Bildner for the purchase of their new home but that the decedent refused to accept the documents from Mrs. Bildner stating that the money was a gift. She further testified that Mrs. Bildner did not bring her the deed of trust nor the note when she brought the checks totalling $26,000.00 some few days prior to the closing.

▬▬▬ The trial judge afforded credibility to the testimony of Ms. Scheitlin on this issue, and determined that the defendant-executor failed to carry his burden of proving that the money was a loan. The essentials of a gift are donative intent, delivery and acceptance. 38 C.J.S. Gifts, § 10. "The essentials of a valid 'gift inter vivos' of personal property are a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely." In re Estate of Simms, 423 S.W.2d 758, 762[2] (Mo. 1968). While the intention of the donor to effect a gift must be a present intention, it is not necessary however that the expression of the intention be synchronous with the delivery. 38 C.J.S. Gifts, § 15. Smith v. Smith, 313 S.W.2d 753 (Mo.App.1958).

▬▬▬ The evidence supports a finding that the money in the form of three cashier's checks was delivered to Mrs. Bildner, the wife of the plaintiff, and the checks were made out in Frank Bildner's name. The plaintiff accepted the checks and used them to pay the purchase price of his home. On this record we conclude that we should defer to the trial court on the issue of the credibility of the witnesses with respect to the counterclaim and we therefore affirm the judgment with respect thereto.

▬▬▬ The trial court did not reach the merits presented in Count II of the plaintiff's petition, the Count seeking recovery in quantum meruit, but dismissed that Count on the grounds that it was an

alternative Count and judgment having been entered on Count I of the petition in favor of plaintiff it was unnecessary for that Count to be decided on its merits. The action of this court reversing the judgment of the trial court on Count I of the petition would, we hold, require that the cause be remanded for a ruling on the merits with respect to the alternative Count. Rule 84.14 directs that the appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give, and unless justice otherwise requires, finally dispose of the case. Nevertheless, the furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had. Even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case was brought under a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him an opportunity to amend his petition, if so advised, so as to make a case upon the theory which his evidence discloses. Nelson v. Grice, 411 S. W.2d 117, 126[5] (Mo.1967). The evidence is clear that between 1941 and 1957 plaintiff worked without wages at the service station jointly operated by the Gucciardos and Mr. Dorsch. There is further evidence that he did not consider his services to be a gift and that Mr. Gucciardo did not so consider them. However, the defense of the statute of limitations has been pleaded, and Count II of the plaintiff's petition realleges all of the allegations in Count I of his petition but seeks therein to recover the reasonable value of his services. He nowhere alleges fraud on the part of the decedent but, rather, that the decedent violated the terms of an agreement to will to plaintiff decedent's interest in the real estate and the service station thereon situate, by executing a will on or about July 18, 1967. This suit was commenced on December 15, 1970. We have held that with respect to Count I and the pleadings thereof incorporated in Count II of plaintiff's petition, there is insufficient evidence of the purported oral agreement to allow of specific performance. Nonetheless, in view of the fact that the trial court did not reach the merits of plaintiff's quantum meruit Count, we conclude that the cause should be reversed and remanded to the trial court with directions to set aside the judgment entered in behalf of the plaintiff and against the defendants on Count I of plaintiff's petition and enter in lieu thereof a judgment in behalf of the defendants and against the plaintiff thereon. We further direct that the trial court set aside its order dismissing Count II of the plaintiff's petition and proceed to dispose of that claim on its merits. We affirm the judgment of the trial court with respect to defendant-executor's counterclaim.

DOWD, C. J., and SIMEONE and WEIER, JJ., concur.