**Wilma Lee BRASSFIELD, Johnnie W. Allwood, Jr., and James K. Allwood, Appellants,**

**v.**

**Alice A. ALLWOOD, Respondent.**

**No. KCD 28728.**

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

Michael L. Midyett, Keytesville, for appellants.

A. V. McCalley, Richmond, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

The appellants Wilma Lee, Johnnie, Jr. and James are children of Johnnie W. Allwood, Sr. now deceased. The father divorced their mother and married Alice Allwood before he died. The property settlement agreement incident to the divorce set over all of the real estate of the marriage to the father. After remarriage the father conveyed this land by deed to himself and Alice Allwood as tenants by the entireties. The father died on August 29, 1973. Thereafter, the children claimed the land as their inheritance as sole heirs of the father.

The children brought their petition against Alice Allwood in two counts. The first count sought to set aside the deed to her on the ground of undue influence and fraud. The second count was for the specific performance of an oral contract alleged between the children and the father to convey the land to them on performance of services to him. The case was tried to the court and at the close of the case for plaintiff, the court dismissed both counts of the petition. This appeal comes only from the dismissal of the count for specific performance.

The testimony of the mother on the formation of the oral contract between the father and children was received, but the two sons were not permitted to relate conversations with the father that the property was to be disposed to the children for their work on the farm, on the objection that § 491.010 RSMo 1969 [Dead Man's Statute] foreclosed such testimony. The court also excluded as immaterial other evidence by the mother and children that thereafter the father periodically reaffirmed that intention of disposition. The appellants [children, Wilma, Johnnie, Jr. and James] contend that the Dead Man's Statute was not properly invoked by specific objection and that, in any event, operation of the statute was waived by failure to object to the testimony of Wilma concerning the formation of the contract. The respondent argues that the evidence by Wilma was so vague that there was no basis for objection under the statute, and hence there was no waiver of her incompetency on the issue of oral contract.

We do not undertake to assess each contention of improper exclusion of evidence, either by the operation of the Dead Man's Statute or principles of materiality. Much of the evidence excluded by the trial court appears through sufficient offers of proof. To that extent, the appellants have given us a record and engaged our review.[1]

1. Two instances of evidential exclusion were not preserved by offers of proof, and so are not for our review: (1) The attempt to elicit from Johnnie, Jr. when he commenced to work on the farm [refused as immaterial] and (2) the inquiry of Johnnie, Jr. as to whether he heard

*Conser v. Atchison T. & S.F. Ry. Co.,* 266 S.W.2d 587, 592[14, 16] (Mo.1954); *Kinzel v. West Park Investment Corporation,* 330 S.W.2d 792, 795[1–3] (Mo.1959). Our review compels concurrence with the determination of the trial court that the proof, made and proffered by appellant children, does not meet the standard equity exacts for recovery on such a cause of action.

◼ The first point of appellants concerns proceedings at the outset of trial. Counsel for appellants [plaintiffs] asked leave to amend Count II for specific performance to include the mother as a party to the oral contract to convey the realty to the children. The respondent objected on the ground the amendment, which could have been done during the more than two years the suit pended, would change the defense and prejudice the defendant. The court sustained the objection and this action is attacked as an abuse of discretion. The appellants cite Rule 55.33(a) to the effect that leave to amend shall be freely given when justice requires, and cases which iterate that general principle of procedure. The function of Rule 55.33(a) is to enable a party to present matters overlooked or unknown at the time the original pleadings were filed. *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 802[18] (Mo.App.1975). But it may not be used as a stratagem for advantage. 6 Wright and Miller, Federal Practice and Procedure, §§ 1473 and 1485, pp. 375 and 422 (1971).

◼ The amendment requested here was of a fact known by counsel from the beginning of the litigation—that is, the identity of the parties to the oral contract. As our further discussion of points more fully discloses, a suit for the specific performance of an oral contract to convey land is a species of petition which equity examines with utmost care to protect against

fraud and perjury. *Walker v. Bohannan,* 243 Mo. 119, 147 S.W. 1024, 1028[1] (1912). These strictures require that the oral contract be clear, explicit and definite, and *proven as pleaded. Bildner v. Giacoma,* 522 S.W.2d 83, 87[3–7] (Mo.App.1975). It is clear then that a defendant who prepares to meet the strict proof required by such a pleading is disadvantaged by the addition of a party which, in effect, changes the cause of action at the threshold of trial. It is evident, in any event, that the refusal to allow amendment of the petition did not prejudice the plaintiffs. At pre-trial, counsel for the plaintiffs conceded the amendment was unnecessary to their theory, and at the trial there was no attempt to prove the mother was party to the contract to convey. We conclude the denial of amendment was not an abuse of discretion. *Broadview Leasing Co. v. Cape Central Airways, Inc.,* 539 S.W.2d 553, 561[4] (Mo.App. 1976).

◼ The question remains whether the evidence sufficiently proves an oral contract to convey which equity will specifically enforce. The appeal is from a final determination on issues tried to the court, therefore our review comes under Rule 73.-01(3). The judgment was entered on the motion of defendant for a directed verdict after plaintiffs completed their evidence in the manner customary in jury cases. Rule 72.01. Such a procedure, however, is anomalous in an equity case and the effect of the motion was merely to submit the issues for decision upon the merits. Rule 67.02; *Moser v. Williams,* 443 S.W.2d 212, 215[1–2] (Mo.App.1969). In the determination of such a submission, the trial court weighs the evidence and resolves conflicts of proof and credibility. *Lee v. Smith,* 484 S.W.2d 38, 42[3] (Mo.App.1972). Our review from such a decision, therefore, is compassed by

the testimony of his mother concerning the family meeting in 1954—presumably when the oral contract was formed [refused on general objection]. Another exclusion of evidence, deemed by the court immaterial, was preserved by offer of proof, but is so clearly without force on the issue of the specific enforcement, that we consider the objection properly ruled. The

question sought to elicit from James that his father told him hospital personnel had recommended that he seek psychiatric help. This evidence may have been admissible on the undue influence count [dismissed and not appealed] but has no bearing on the issue of formation of the contract some thirteen years earlier.

the principle of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) that we affirm the decree of the trial court which rests on substantial evidence and is otherwise agreeable to law.

The plaintiffs pleaded an oral contract with the father whereby he promised: "[I]f they [the children] would render assistance to him in his farming operation and with his household duties and did all things to be done and performed by them with respect to assisting him, that in consideration for such assistance plaintiffs would receive the real property above described." No date is pleaded for the formation of the contract, nor does the pleading declare precisely how much acreage was encompassed by the offer. Allwood, Sr. and wife Madeline had amassed 800 acres by the time of the divorce, all of which were set over to him by the terms of their separation agreement, and all of which were thereafter conveyed by Allwood, Sr. to himself and second wife Alice as tenants by the entireties.

The evidence of the plaintiffs—both as received and as offered in proof—discloses:

According to the testimony of Madeline, one Sunday during the year 1954, a time when her marriage to Allwood, Sr. still subsisted, the family was gathered around the dinner table. The parents were about to purchase 152 acres, their first acquisition of land, and the father asked the children what they thought about the undertaking since: "[Y]ou're going to have to work to pay for it . . . it will be yours when your Mother and I retire or when we're gone." To which the children responded: "Go ahead and we'll help to work and pay for it; go ahead and buy it." Madeline testified also that this offer by her husband was repeated "periodically at numerous times". The children thereafter worked on the farm in addition to the regular household chores.

Wilma began her farm work when she was about eleven in the year 1946, and left home in 1953 when she married. The next year Wilma and her husband returned to the farm to help the parents, and they were both present on that Sunday in 1954 when the oral promise of the father was made. Wilma and her husband worked on the farm for three years thereafter for $150 per month and a share of the profits. According to Wilma, the profits were never paid but were used, rather, to purchase more property for eventual ownership by the children—"if [they] would all work hard". Wilma was not asked about the 1954 dinner-table oral promise by the father. It was her testimony that sometime *in year 1947,* when she was only eleven, her father told her that "if [she] would start to work more and help in the fields more, that [they] would be able to have real estate for [her] brothers and [her]self". It was upon that promise that she commenced to work in the fields with the hired hands. The father at numerous times thereafter reaffirmed that he intended to dispose the property to the children, and it was on that expectation that she later relinquished her application to become an airline stewardess.

Johnnie Jr. commenced to work in the fields in 1951 when he was about ten years of age. According to his testimony, he was present at the Sunday dinner-table in 1954 and in consequence, he did all that his father asked him to do on the farm. Then in 1959 he enlisted in the Air Force but returned to the farm in 1962 because his father was ill, and remained until 1964. He was paid for the work he performed for his father during this period. He offered to prove that on many occasions his father reaffirmed that for his work, the land would be given to him, his brother and sister.

James was the youngest child and as soon as he was old enough to work in the fields, he did. He was only nine years of age in 1954 and did not recall the family conference. He took over management of the family farm during the time his father was incapacitated by illness because by that time Wilma and Johnnie, Jr. had left the home. In year 1963 he enrolled at the university, married, and never returned to the home except to visit. His testimony was offered to prove conversations with his father to the effect that if James worked

on the family farm and did all that the father requested of him, "*the farm and all of the property that was owned by [the] father*" would be conveyed to the children or left to them upon his death.

The evidence did not dispute that while the children lived on the farm as members of the household—before emancipation by marriage or military service—the parents provided their necessaries.

The evidence shows also that the final acquisition of farm land by the Allwood parents was only months before their marriage ended by court decree. In contemplation of dissolution, the parties entered into a separation agreement which set over to a third party all the real estate owned by them for conveyance to the husband in consideration of payment to the wife of $35,-000. The terms of the agreement were performed at the death of the husband.

■ An oral contract to convey land falls within the literal ambit of the statute of frauds and so will not be enforced at law. *Jones v. Linder*, 247 S.W.2d 817, 819[3] (Mo. 1952); § 453.010 RSMo 1969. Equity will decree specific performance, however, where a party has so far acted on the promise that to deny him the benefit of the agreement would be unjust. *Sportsman v. Halstead*, 347 Mo. 286, 147 S.W.2d 447, 456[10] (1941). This resort to equity avails sparingly, and only upon clear and convincing proof of a definite agreement supported by an adequate consideration. *Watkins v. Watkins*, 397 S.W.2d 603, 609[2, 3] (Mo. 1965); *Treon v. Coffelt*, 334 S.W.2d 94, 101[1, 2] (Mo.1960). The elements of proof required by equity for the specific performance of an oral contract to convey real estate were prescribed in *Walker v. Bohannan, supra, l.c.* 1028[1] and have been uniformly followed since:

(1) The alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had.

The respondent here contends that the oral contract alleged between the father and the children was deficient in each of the eight aspects of proof. The appellants argue the cumulative effect of their evidence of farm work in reliance on the promise to convey, and cite three cases without discussion. *Tuckwiller v. Tuckwiller*, 413 S.W.2d 274 (Mo.1967) concerned a written contract and does not apply here. *Jennings v. Achuff*, 272 S.W.2d 263 (Mo.1954) and *Watkins v. Watkins, supra,* each enforced specific performance of an oral contract to convey land, but only after the court found that the eight canons of *Walker v. Bohannan, supra,* had been met.

We believe that on the facts in evidence *Walker v. Bohannan, supra,* and *Bildner v. Giacoma, supra,* are nearer precedents. *Walker* sought to enforce an oral contract whereby the plaintiffs and their father agreed to move onto the farm of decedent, then blind, and in exchange for all his property take care of decedent until his death. The court affirmed denial of specific performance because two prerequisite proofs had not been made: (1) the contract plead-

ed was not proven and (2) performance by plaintiffs was not solely referable to the oral contract alleged. As to the first ground, the evidence was that the decedent promised only to give plaintiffs his farm, not all of his property as in the contract pleaded. Thus, the evidence did not establish the contract as pleaded. As to performance, the evidence was that the father of plaintiffs had a separate contract with decedent by which he was to have the use of the farm for which he was to pay decedent and board him. The court found that every act by the plaintiffs was reasonably referable to the separate contract with the father as to the alleged oral contract. So, also, in *Bildner,* the court found that the contract pleaded was not the contract proved and denied enforcement.

∎ While it is not necessary to definiteness that the oral contract be detailed [*Smith v. Lore,* 325 Mo. 282, 29 S.W.2d 91, 95[1] (1930)], there must be proof by clear and convincing evidence of an explicit agreement capable of specific performance. *Watkins v. Watkins, supra,* l.c. 609[2, 3]. The petition pleaded that the father promised the described real estate [*800 acres*] to the children in consideration of their assistance in the operation of the farm and household. However, the evidence proved, not the single and definite promise pleaded, but a series of disparate and casual hortations. The basic oral agreement, according to then wife Madeline, was the promise of the father around the family table in 1954 to dispose to the children the *152 acres* about to be purchased on the reciprocal promise of the children that they would work to help pay for the land.

∎ The daughter Wilma recalls the promise, but she was then married and whatever work she and her husband did on the farm was under an agreement for payment, and not inheritance. They were promised a monthly sum and a share of the profits. She testified the profits were never paid but were used by the father to purchase more property for eventual ownership by the children if they worked hard. Thus her claim reduces to the promise that

she would inherit land in lieu of a share of the profits. There was no testimony how much profit accumulated, if indeed any at all, nor how much of her undistributed earnings went to purchase more land. That is to say, she failed to prove consideration for the oral promise to convey, and thus failed as to element seven required by *Walker v. Bohannan, supra,* for such a cause of action. *Forrister v. Sullivan,* 231 Mo. 345, 132 S.W. 722, 730 (1910). This claim of a *1954* contract becomes even more murky by her testimony that sometime in year *1947,* when she was only eleven, her father had told her that if she helped more, the parents would be able to acquire real estate for the children—and that *it was upon that promise* that she commenced to work in the fields.

Johnnie, Jr. was also at the 1954 family table, but his testimony does not disclose what he understood by the promise made by the father—except that as a consequence he did all his father bid him to do on the farm. He left the home in 1959 for the Air Force and on his return was paid for his domestic work for as long as he remained on the farm.

James did not recall the 1954 family conference and made no claim that his work on the farm was in pursuance of an oral promise made then by the father. His testimony was offered to prove that for his work on the family farm, *the farm and all of the property that was owned by the father* would belong to the children. Thus, his testimony proved a promise not as pleaded, but enlarged to encompass all the father owned and not merely the land acreage.

The difficulty of decision for the trial court, and now on review, begins from an uncertainty as to which of the numerous conversations the plaintiffs intend to plead as their basis of recovery. If the pleading means to describe the 1954 episode, then the testimony of Madeline that the 152 acres were promised [instead of the 800 acres pleaded], proves a different contract—and the testimony of daughter Wilma that she performed in consequence of a 1947 promise also refers to a different contract—and the

testimony of the boys that they performed in response to the recurrent exhortations of the father, unspecified as to time and place and contradictory as to the promised reward—also proves a different contract. If, on the other hand, the periodic promises by the father to the children can be taken as something more than loose and casual talk, they show merely a series of unilateral offers to the children individually, and not the single promise on the terms pleaded.

This laxness between pleading and proof fails the requirements of *Walker v. Bohannan, supra,* that the allegation of oral contract be clear, explicit and definite and that the contract be proven as pleaded. *Bildner v. Giacoma, supra,* l.c. 89[11]; *Higgins v. Rachford,* 307 S.W.2d 411, 419[4] (Mo.1957). The judgment of the trial court that plaintiffs are not entitled to equity is supported by substantial evidence and the applicable principles of law.

Other considerations of equity also require denial of specific performance: enforcement would be unconscionable and lack of adequate consideration for the promise of conveyance. [Elements of proof 4 and 7, *Walker v. Bohannan, supra.*]

The evidence shows without dispute that the boys lived together with the parents as one household at the time of the alleged promise of 1954 was made. The daughter Wilma lived with them in that relationship in 1947 when that alleged promise was made. The parents furnished them necessaries, and the children worked domestically. They lived together in a family relationship: that is, as a collective body under one domestic government and head, each with the reciprocal, natural and moral duty to support and care for each other. *Jaycox v. Brune,* 434 S.W.2d 539, 544[11–14] (Mo. 1968). A family relationship gives rise to the presumption that services were rendered gratuitously, even though a member may entertain a hope of payment. Thus the law implies no promise to pay for services rendered to the common family purpose. *Vosburg v. Smith,* 272 S.W.2d 297, 301[1–6] (Mo.App.1954). This presumption of gratuity extends to extraordinary as well

as usual services [*Trantham v. Gullic,* 201 S.W.2d 522, 530[9, 10] (Mo.App.1947); 98 C.J.S. Work & Labor, § 16d] and is overcome only by clear and convincing evidence of an agreement for payment. *Vosburg v. Smith, supra,* l.c. 301[1–6]; *Jaycox v. Brune, supra,* l.c. 542[1, 2].

The evidence is clear that the boys and Wilma began to work on the farm and household from as early as they could remember. They drove tractors, milked and did all the chores directed by their parents. The proof allows no doubt that the Allwood family purpose was the farm operation. Nor is there doubt that the work they did after the alleged promises was precisely the same as before. The judgment of the trial court imports determination that the plaintiffs failed to show by clear and convincing evidence their services were intended other than gratuitously. This means there was no consideration for the alleged oral promise[s] to convey and their claim in equity fails on that ground also.

It may be that daughter Wilma has the proof to show the amount of profits under the contract for hire with her father, but withheld by him to purchase land. Even so, equity will not decree specific performance when the service rendered can easily be recompensed in money. It would be unconscionable to enforce the conveyance to her of an undivided one-third estate in eight hundred acres of farmland when the remedy at law for the value of those brief services is available and entirely adequate. *Selle v. Selle,* 337 Mo. 1234, 88 S.W.2d 877, 882[6–10] (1935).

The judgment is affirmed.

All concur.